261 P.3d 47 (2011)
244 Or. App. 523
G.J.L., aka G.J.L.; and B. G., Petitioners-Appellants,
v.
A.K.L. and Oregon Department of Human Services, Respondents below, and
C.A.S., Respondent-Respondent.
080766876; A143417.
Court of Appeals of Oregon.
Argued and Submitted July 2, 2010.
Decided July 27, 2011.
Mark Kramer, Portland, argued the cause for appellants. With him on the brief was Kramer & Associates.
No appearance for respondent C.A.S.
Before ORTEGA, Presiding Judge, and SERCOMBE, Judge, and LANDAU, Judge pro tempore.
ORTEGA, P.J.
Petitioners G.J.L. and B.G. (grandparents) appeal from a judgment denying their petition for court-ordered visitation with their grandson, A.L. A.L.'s father (grandfather's son and grandmother's stepson) failed to appear below, but A.L.'s mother appeared and opposed the petition, though mother does not appear on appeal. Grandparents request de novo review pursuant to ORAP 5.40(8)(d).[1] The trial court's factual findings are brief and do not directly address most of the factors that, under ORS 109.119(4)(a), are central to our analysis. Despite differing accounts from witnesses of some events, the court made no explicit credibility findings, *48 although it did note that the witnesses were "respectful" and "thoughtful." Under the circumstances, we agree with grandparents that de novo review is warranted, though we give considerable weight to the findings that were made by the trial court, which had the opportunity to observe the witnesses. See Turner and Muller, 237 Or.App. 192, 197-98, 238 P.3d 1003 (2010), rev. den., 350 Or. 231, 253 P.3d 1080 (2011) (reviewing de novo where the trial court's express findings were limited and did not mirror the statutory factors and the appellate court could not discern how implied findings may have affected the trial court's ultimate determination); see also O'Donnell-Lamont and Lamont, 337 Or. 86, 89, 91 P.3d 721 (2004), cert. den., 543 U.S. 1050, 125 S.Ct. 867, 160 L.Ed.2d 770 (2005) (noting that the trial court's findings are entitled to considerable weight). Because, on balance, grandparents have not rebutted the presumption under ORS 109.119(4)(a) that mother acts in A.L.'s best interests, we affirm.
A.L. was born in December 2006. When he was an infant, mother and father took A.L. to visit grandparents and other family members in grandparents' home, and those visits were positive. In 2007, when A.L. was 10 months old, the Department of Human Services (DHS) removed A.L. from mother and father's home after mother and father became assaultive while police were executing a search warrant at their home. Shortly afterward, grandparents were certified as foster parents, and DHS placed A.L. with them at the parents' request.
At first, mother and father frequently visited A.L. in grandparents' home, but an argument about the type of formula being provided to A.L. soon led to the cessation of those visits. Since that time, mother and father have cut off communication with grandparents, rejecting grandparents' offers to participate in mediation or counseling. Mother and grandparents also had disputes about cutting A.L.'s hair, which has cultural significance for mother.
A.L. formed a positive relationship with grandparents while he was in their care, and he has good relationships with family members who saw him in grandparents' home. According to grandparents, however, mother and father stated that, after they regained custody of A.L., grandparents would never see him again. Accordingly, in July 2008, grandparents filed a petition seeking visitation every other week, alternating between 24-hour and 48-hour visits, as well as one week in the summer and additional 24-hour visits within one or two weeks of Christmas, Easter, and A.L.'s birthdaya total of approximately 49 days per year. Grandparents also sought the right to contact A.L., including by phone and e-mail, and an order restraining both mother and grandparents from moving more than 60 miles further from the other without 60 days' notice to the other party and the court.
Pursuant to ORS 419B.806, this case was consolidated with the juvenile court case,[2] after which the petition for visitation was stayed. A.L. returned to his parents' physical custody in January 2009, after about 14 months in grandparents' care, and mother testified that A.L. is happy and healthy at home. Grandparents were upset with what they saw as an abrupt transition from their care, and they asked for more time for the transition. Mother, for her part, was upset because she felt that grandparents had tried to delay A.L.'s return to her.
The juvenile court's wardship of A.L. continued apparently until fall 2009. As provided by court order, A.L. had one 24-hour visit with grandparents every two weeks, and *49 those visits went well. The stay on grandparents' visitation petition was lifted in June 2009, about six months after A.L. returned to his parents. The hearing on the petition was held during the two months following entry of the order lifting the stay.[3]
According to grandparents, A.L. enjoys his visits with them and sometimes expresses a desire not to leave at the end of visits. Mother, on the other hand, testified that A.L. is happy to be home with his parents and becomes upset when he has to leave to visit his grandparents. Grandmother testified that she thinks "the transition, both ways, * * * is hard for him."
Although grandparents initially alleged that mother and father have a history of drug use and had engaged in violent behavior in front of A.L., there was no evidence that any such behavior continued at the time of the hearing. Rather, grandparents' present concern is that A.L. will suffer from losing his relationship with them and other family members. Two witnessesA.L.'s daycare teacher and grandparents' neighbor, who is experienced in prekindergarten education and volunteers at A.L.'s daycaretestified to their belief that A.L. has strong relationships with both grandparents and that being cut off from them would be detrimental to him.
Mother, on the other hand, expressed concern about visitation occurring at this time. Although part of mother's motivation is her feeling that she should make all decisions regarding A.L.'s welfare, she also expressed a belief that A.L. needs time to reconnect with mother and father and with mother's family. In her view, it is in A.L.'s best interest to focus on "feeling stable in our home. I mean, we lost a lot of time with our son, thatthat shouldn't have happened, and you need to let our family become whole, and a family unit, again. I think that's the focus, is on our family, and not [grandparents]." According to mother, A.L. needs to feel secure that he will not be removed from the parental home; she observes that having to leave for visits is upsetting and detrimental to him. In her view, if grandparents "really cared about our family, and loved us, and wanted to be a part of our family, again, then they'd let this healing process happen, and let it show that they do care. And, then, you know, we can decide from there whether or not to let them visit." Mother testified that she would be open to visits later and would allow visits if A.L. wanted to see grandparents.
The trial court denied grandparents' petition. The court found:
"Parents have successfully completed services on the consolidated dependency case. They now have legal and physical custody of [A.L.]. He is developing normally and is bonded to his parents. His material and emotional needs are being met by his parents.
"[Grandparents] have established a child-parent relationship with [A.L.]. ORS 109.119(10)(a). They have standing to seek court-ordered visitation.
"The court is satisfied that contact between [grandparents] and [A.L.] has been and can continue to be a positive element in [A.L.'s] healthy growth toward adulthood. Nevertheless, a significant unhealthy relationship exists between [grandparents] and mother (father having been defaulted by previous court order) which impacts very negatively upon the child. Resolution of this unhealthy relationship is unlikely without a substantial amount of time and effort.
"Accordingly, [grandparents] have not rebutted by a preponderance of the evidence the presumption that the mother is acting in the best interests of [A.L.] by not agreeing to and implementing a visitation plan acceptable to [grandparents]."
Grandparents appeal. They contend that they rebutted the presumption that mother acts in A.L.'s best interest because grandparents recently had been A.L.'s primary caretakers, A.L. would suffer serious detriment from the loss of his relationship with grandparents and other family members, mother and father consented to the relationship between A.L. and grandparents, granting relief would not substantially interfere with the *50 custodial relationship, and mother would unreasonably deny or limit contact between A.L. and grandparents. They further contend that visitation is in A.L.'s best interest and that the dysfunction in the relationship between mother and grandparents is entirely driven by mother and should not deprive A.L. of beneficial relationships.
We begin with the pertinent statute. Grandparents sought relief under ORS 109.119, which provides, in part:
"(2)(a) In any proceeding under this section, there is a presumption that the legal parent acts in the best interest of the child.
"(b) In an order granting relief under this section, the court shall include findings of fact supporting the rebuttal of the presumption described in paragraph (a) of this subsection.
"* * * * *
"(3)(a) If the court determines that a child-parent relationship exists and if the court determines that the presumption described in subsection (2)(a) of this section has been rebutted by a preponderance of the evidence, the court shall grant custody, guardianship, right of visitation or other right to the person having the child-parent relationship, if to do so is in the best interest of the child. * * *
"* * * * *
"(4)(a) In deciding whether the presumption described in subsection (2)(a) of this section has been rebutted and whether to award visitation or contact rights over the objection of the legal parent, the court may consider factors including, but not limited to, the following, which may be shown by the evidence:
"(A) The petitioner or intervenor is or recently has been the child's primary caretaker;
"(B) Circumstances detrimental to the child exist if relief is denied;
"(C) The legal parent has fostered, encouraged or consented to the relationship between the child and the petitioner or intervenor;
"(D) Granting relief would not substantially interfere with the custodial relationship; or
"(E) The legal parent has unreasonably denied or limited contact between the child and the petitioner or intervenor."
There is no dispute in this case that grandparents have established a child-parent relationship with A.L. Accordingly, we consider whether they rebutted the presumption that mother, A.L.'s legal parent, acts in his best interest. We understand grandparents to argue that mother does not act in A.L.'s best interest with regard to visitation with grandparents, but not that she presently fails to act in A.L.'s best interest in other ways. In the analysis of the rebuttal factors, as the Supreme Court noted about a custody determination under ORS 109.119(4)(b),[4] the focus "is not on whether one or more of the statutory factors are present, but on whether the evidence as a whole is sufficient to overcome the presumption that the parent acts in the best interest of the child." O'Donnell-Lamont, 337 Or. at 109, 91 P.3d 721 (footnote omitted).
With that in mind, we turn to the statutory factors. The first is whether the petitioners are, or recently have been, the child's primary caretakers. ORS 109.119(4)(a)(A). *51 That factor "focuses on the interest in continuity of caregiving and the relationship between the child and the nonparent * * *." O'Donnell-Lamont, 337 Or. at 111, 91 P.3d 721. Here, grandparents were A.L.'s primary caretakers for 14 months. On the other hand, mother was A.L.'s primary caretaker for the first 10 months of his life and for the six months before the beginning of trial. Because both grandparents and mother recently have filled the primary caretaker role, we give it little weight in considering whether grandparents rebutted the presumption that mother acts in A.L.'s best interests. See Nguyen and Nguyen, 226 Or.App. 183, 195, 203 P.3d 265, rev. den., 347 Or. 42, 217 P.3d 688 (2009) (holding likewise where both the mother and the grandparents had recently filled the role of primary caretaker).
We next consider whether circumstances detrimental to A.L. exist if relief is denied. ORS 109.119(4)(a)(B). "`Circumstances detrimental to the child' includes but is not limited to circumstances that may cause psychological, emotional or physical harm to a child." ORS 109.119(10)(b). As the Supreme Court has explained, the presumption that a parent acts in the child's best interest "would be almost meaningless if it could be overcome by evidence that the circumstances of living with a legal parent `may cause psychological, emotional, or physical harm to a child.'" O'Donnell-Lamont, 337 Or. at 112, 91 P.3d 721 (emphasis in original). Accordingly, to rebut the statutory presumption, "the nonparent must demonstrate that the circumstances of living with the legal parent pose a serious present risk of psychological, emotional, or physical harm to the child." Id. at 113, 91 P.3d 721; see also id. at 113-14, 91 P.3d 721 (concluding that the grandparents proved that factor where the father lacked understanding of the children's needs, had difficulty controlling his anger, and was unable to recognize any of his or his significant other's deficiencies as caregivers).
Grandparents argue that the proof required for that factor should be lower in a visitation case than in a custody case. Although asserting that they do not ask for the abandonment of the "serious present risk" requirement, they contend that "the court should consider the harm to [A.L.] over the long term (not just the present)" from losing relationships with grandparents and other family members. Grandparents' argument necessarily implies that we can read the same statutory phrase"[c]ircumstances detrimental to the child exist if relief is denied"as meaning something different in ORS 109.119(4)(a)(B) than in ORS 109.119(4)(b)(C). We disagree. The legislature accounted for different considerations in visitation and custody cases by providing slightly different statutory factors in ORS 109.119(4)(a) and (b). Although the degree of interference with the custodial relationship is a factor in determining visitation petitions, ORS 109.119(4)(a)(D), we see no basis for treating that fact as changing the meaning of "[c]ircumstances detrimental to the child," especially given that the legislature supplied a single statutory definition for that phrase, ORS 109.119(10)(b).
Grandparents failed to prove that A.L. will face a serious present risk of harm if their petition for visitation is denied. As the trial court found, A.L. is developing normally, and mother and father are meeting his material and emotional needs. On this record, it appears that A.L. sometimes becomes upset when he leaves mother's home for grandparents' home and when he leaves grandparents' home for mother's home, and it appears possible that, over the long run, A.L. may suffer from losing relationships. That evidence, however, does not establish the sort of serious present risk of harm needed to prove detrimental circumstances under ORS 109.119(4)(a)(B). We conclude that grandparents failed to prove that factor.
The next factor is whether mother fostered, encouraged, or consented to the relationship between A.L. and grandparents. ORS 109.119(4)(a)(C). If a parent has done so, that suggests that the parent, "at least at one point, apparently believed that that relationship was beneficial, or at least not detrimental, to the child." O'Donnell-Lamont, 337 Or. at 115, 91 P.3d 721. Here, mother took A.L. for some visits with grandparents before A.L. was removed from mother's care, and she initially encouraged grandparents to become A.L.'s foster parents. Although the *52 relationship between mother and grandparents is extremely strained at present, mother apparently used to believe that the relationship between grandparents and A.L. was beneficial to A.L. Grandparents thus proved that rebuttal factor.
We next consider whether granting relief would substantially interfere with the custodial relationship. ORS 109.119(4)(a)(D). Here, grandparents sought approximately 49 full days of visitation per year. More significantly, at the time of trial, A.L. was readjusting to living in his parents' home after being out of their custody for an extended time. Although we find no reason to disbelieve grandparents' testimony that they do not wish to undermine mother's and father's relationships with A.L., we also accord weight to mother's concern that A.L. needs time to reestablish a sense of security in the parental home. At this juncture, the risk of interference with the custodial relationship is considerable. Grandparents did not prove that rebuttal factor.
The final factor is whether mother has unreasonably denied or limited contact between A.L. and grandparents. ORS 109.119(4)(a)(E). That factor focuses on the potential harm to a child's interest if the parent terminates or limits a relationship with a nonparent. O'Donnell-Lamont, 337 Or. at 116, 91 P.3d 721. In considering that factor, we take into account whether the parent will, in the future, unreasonably deny or restrict contact. Nguyen, 226 Or.App. at 197, 203 P.3d 265. Although mother expressed willingness to consider contact in the future, she and father also have threatened to cut off all contact between A.L. and grandparents. In light of mother's unwillingness to have any communication with grandparents, we give greater weight to her threats than to her testimony that she would consider visits. Grandparents proved that rebuttal factor.
Finally, in light of grandparents' proof of some, but not all, of the above factors, we consider whether grandparents rebutted the presumption that mother acts in A.L.'s best interest. On this record, we conclude that they did not do so. Most significant, in our view, is grandparents' failure to prove that circumstances detrimental to A.L. exist and that granting relief would not substantially interfere with the custodial relationship. Although we share the trial court's view that a relationship with grandparents can be a positive element in A.L.'s life, the statutory presumption accords parents significant freedom to make decisions on behalf of their children, even when the wisdom of those decisions may be arguableas in this case, where the circumstances detrimental to A.L. are not sufficiently imminent and where the relief sought has the potential to significantly interfere with mother's relationship with A.L. Accordingly, grandparents have not, at this time, rebutted the presumption that mother is acting in A.L.'s best interest.
Affirmed.
NOTES
[1] ORAP 5.40(8)(d) provides:

"The Court of Appeals considers the items set out below to be relevant to the decision whether to exercise its discretion to try the cause anew on the record or make one or more factual findings anew on the record. These considerations, which are neither exclusive nor binding, are published to inform and assist the bar and the public.
"(i) Whether the trial court made express factual findings, including demeanor-based credibility findings.
"(ii) Whether the trial court's decision comports with its express factual findings or with uncontroverted evidence in the record.
"(iii) Whether the trial court was specifically alerted to a disputed factual matter and the importance of that disputed factual matter to the trial court's ultimate disposition of the case or to the assignment(s) of error raised on appeal.
"(iv) Whether the factual finding(s) that the appellant requests the court find anew is important to the trial court's ruling that is at issue on appeal (i.e., whether an appellate determination of the facts in appellant's favor would likely provide a basis for reversing or modifying the trial court's ruling).
"(v) Whether the trial court made an erroneous legal ruling, reversal or modification of which would substantially alter the admissible contents of the record (e.g., a ruling on the admissibility of evidence), and determination of factual issues on the altered record in the Court of Appeals, rather than remand to the trial court for reconsideration, would be judicially efficient."
[2] Grandparents included in their designation of record "the juvenile court files * * * as the cases were previously consolidated." In this context, "consolidation" simply means "that actions are heard before one judge of the circuit court to determine issues regarding a child or ward," ORS 419B.806(1), and it "does not merge the procedural or substantive law of the individual actions," ORS 419B.806(3). We question grandparents' assumption that consolidation causes the juvenile court case file automatically to become part of the record in this case. See ORS 419B.806(6) ("The judge shall set out separately from orders entered under this chapter or ORS chapter 419C any orders or judgments made in other actions subject to the consolidation order. The trial court administrator shall file the orders and judgments in the appropriate actions subject to the consolidation order."). In any event, we need not decide that issue, as grandparents have not specifically referenced anything from the juvenile court file.
[3] The consolidation of the dependency case and the visitation proceeding was vacated in September 2009 because the juvenile court's wardship of A.L. had ended.
[4] Similar to ORS 109.119(4)(a), ORS 109.119(4)(b) provides:

"In deciding whether the presumption described in subsection (2)(a) of this section has been rebutted and whether to award custody, guardianship or other rights over the objection of the legal parent, the court may consider factors including, but not limited to, the following, which may be shown by the evidence:
"(A) The legal parent is unwilling or unable to care adequately for the child;
"(B) The petitioner or intervenor is or recently has been the child's primary caretaker;
"(C) Circumstances detrimental to the child exist if relief is denied;
"(D) The legal parent has fostered, encouraged or consented to the relationship between the child and the petitioner or intervenor; or
"(E) The legal parent has unreasonably denied or limited contact between the child and the petitioner or intervenor."
Thus, the factors present in one type of case but not the other are (1) the consideration, in a custody case, of the adequacy of the parent's care for the child and (2) the consideration, in a visitation case, of whether granting relief would substantially interfere with the custodial relationship.