No. 305          May 8, 2024          519

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Dustin M. McGEEHAN,
aka Dustin M. Hill,
*Petitioner,*

*v.*

Misty CUNNINGHAM,
*Respondent-Appellant,*
*and*

Judy HILL,
*Intervenor-Respondent.*

Jackson County Circuit Court
14DR02694; A179522

David G. Hoppe, Judge.

Argued and submitted October 11, 2023.

Rachael A. Federico argued the cause for appellant. Also on the brief was Legal Aid Services of Oregon.

No appearance by respondent.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Reversed.

**JOYCE, J.**

Mother appeals from a supplemental judgment that granted her child's paternal grandmother visitation and the right to travel internationally with the child.[1] We reverse.

We begin by describing the statutory framework that governs a trial court's authority to grant visitation to, as relevant here, a grandparent who has "an ongoing personal relationship" with a child. ORS 109.119(1). ORS 109.119(2)(a) begins by setting forth the "presumption that the legal parent acts in the best interest of the child." However, if a court determines that that presumption has been rebutted by clear and convincing evidence, a court "shall grant visitation" if doing so is in the best interest of the child. ORS 109.119(3)(b). These determinations are "not made by a court simply reasoning whether it is in a child's best interest to have visitation with a person with an ongoing personal relationship, then backtracking from that determination to conclude that the parent's decision to disallow that visitation therefore demonstrates that the parent did not act in the child's best interest." *Pulley v. Herndon*, 324 Or App 568, 579, 527 P3d 19 (2023). Instead, under ORS 109.119, "the court shall grant visitation rights only if it first determines that the legal parent is not acting in the child's best interest. Thus, the court must make findings to support that determination before analyzing whether visitation would be in the best interest of the child." *Kennison v. Dyke*, 280 Or App 121, 125, 376 P3d 301 (2016).

To assist courts in making that determination, ORS 109.119(4)(a)(A) to (E) set out a list of non-exclusive factors that the court may consider:

- The grandparent "is or recently has been the child's primary caretaker";

- "Circumstances detrimental to the child exist if relief is denied";

- "The legal parent has fostered, encouraged or consented to the relationship between the child" and the grandparent;

---

[1] Grandmother did not appear on appeal.

- "Granting relief would not substantially interfere with the custodial relationship"; and

- "The legal parent has unreasonably denied or limited contact between the child" and the grandparent.

Under the statute, then, at the first step of the analysis, the court must "complete two related tasks: (1) it must make findings of fact as to the evidence presented and (2) it must determine whether those factual findings, when viewed as a whole, constitute clear and convincing evidence that the presumption in favor of the legal parent was rebutted." *Husk v. Adelman*, 281 Or App 378, 382, 383 P3d 961 (2016) (citing ORS 109.119(2)(b), which requires a court to make "findings of fact supporting the rebuttal of the presumption"). The focus "'is not on whether one or more of the statutory factors are present, but on whether the evidence as a whole is sufficient to overcome the presumption that the parent acts in the best interest of the child.'" *G. J. L. v. A. K. L.*, 244 Or App 523, 530-31, 261 P3d 47, *rev den*, 351 Or 507 (2011) (quoting *O'Donnell-Lamont and Lamont*, 337 Or 86, 109, 91 P3d 721 (2004), *cert den*, 543 US 1050 (2005) (footnote omitted)).

With that legal framework in mind, we turn to the facts and the court's ruling, mindful of the standard of review governing these proceedings.[2] We first examine the trial court's findings of fact and review for any evidence supporting those findings. *Husk*, 281 Or App at 383. Then, "we take the factual findings that are supported by the evidence and assess whether, based on those facts, the court had a sufficient basis to conclude that the presumption was rebutted by clear and convincing evidence." *Id.*

The child, C, is 14 years old. After C's mother and father separated, they litigated custody and parenting time. Mother was granted custody of C, and father had visitation rights. As relevant here, grandmother—while not a party to that litigation—was permitted to visit with C, in lieu of C's father, if father was not available to visit. C's father died in 2019. Shortly after his death, grandmother moved to intervene in the custody case. The trial court ordered temporary

---

[2] Mother has not requested *de novo* review.

visitation for grandmother and a custody and parenting time evaluation.

Dr. Bourg conducted that evaluation. She concluded that mother is "repeatedly acting in [C's] best interest." In her view, "mother is a very good parent who overwhelmingly acts in [C's] best interest," and C was "happy, healthy and well-adjusted" in mother's care. Bourg also concluded that grandmother could provide "high[] standards for educational support, broadening cultural exposure and higher social standards" and could provide him with experiences like flying and "adventuring." Bourg observed that C valued his relationship with grandmother and was aware that mother and grandmother had difficulties getting along. But, despite that conflict, Bourg observed that C had been "a bit immune, or kind of Teflon like to some of the negative stuff he's been exposed to." C did not want a set visitation schedule with grandmother; rather, he wanted to visit her when it was convenient for him and his family.

Bourg also concluded that mother unreasonably restricted visits between grandmother and C; although mother sometimes allowed visits, it was inconsistent. Both mother and grandmother contributed to the negative relationship that they had, and Bourg did not believe that that relationship dynamic would change. In her view, mother was not able to make a "neutral decision" about C's ongoing contact with grandmother. At the same time, Bourg did not credit grandmother's concern that mother was adversely impacting C's mental health. Bourg ultimately recommended that the court order visitation with grandmother.

The trial court concluded that grandmother had rebutted the presumption that mother acts in C's best interest. Its factual findings were limited. It noted, without elaboration, that grandmother "has never been the primary caretaker of the child" and that "circumstances detrimental to [C] exist if relief is denied." It further concluded, again without elaboration, that the relief that it granted would not substantially interfere with a custodial relationship and that mother had unreasonably denied contact between C and grandmother. The court observed that C seemed "impervious to the negative things" that the court had observed between

grandmother and mother and that he was a "well-adjusted, mature young man." Although it concluded that mother "has been a fit parent and has taken care of" C, "[m]other hates [g]randma and [g]randma hates [m]other and I have no hope for that relationship going forward." The court had concerns about grandmother's use of alcohol and Xanax and concluded that it was in C's best interest to receive training to recognize when grandmother was under the influence of either. The court required mother to obtain a passport for C to enable grandmother to travel internationally with C. It then granted grandmother one weekend-long visit per month and two one-week-long visits during summers.

On appeal, mother contends that no evidence in the record supports the court's findings that circumstances detrimental to C existed were grandmother's request for visitation to be denied and that awarding grandmother visitation was not a substantial interference with mother's custodial relationship. She further argues that the record as a whole is legally insufficient to support the court's conclusion that grandmother had proven by clear and convincing evidence that grandmother had rebutted the presumption that mother acts in C's best interest.[3]

We begin with mother's challenge to the court's determination that C would suffer detriment if the court did not order visitation with grandmother. To show that circumstances detrimental to the child exist if relief is denied, "'the nonparent must demonstrate that the circumstances of living with the legal parent pose a serious present risk of psychological, emotional, or physical harm to the child.'" *G. J. L.*, 244 Or App at 532 (quoting *O'Donnell-Lamont*, 337 Or at 113); *see also* ORS 109.119(10)(b) ("'Circumstances detrimental to the child' includes but is not limited to circumstances that may cause psychological, emotional or physical harm to a child"). Evidence of harm that a child may suffer from losing relationships with extended family does not pose the sort of "*serious* present risk of harm needed to prove detrimental circumstances," particularly where a child is otherwise developing normally and is having their

---

[3] Mother does not contest the court's finding that mother has unreasonably denied or limited contact between grandmother and C.

"material and emotional needs" met. *G. J. L.*, 244 Or App at 532-33 (emphasis in original); *see also Pulley*, 324 Or App at 587 (grandparent failed to show that circumstances were seriously detrimental to child where the evidence showed that the child was happy and well-adjusted, reaching developmental milestones, and mother was meeting his needs). *Cf. O'Donnell-Lamont*, 337 Or at 113 (where a parent failed to understand the children's emotional and developmental needs, had difficulty controlling his anger, and lacked insight into his shortcomings in parenting, all of which created a serious risk of psychological or emotional harm, grandparents had overcome presumption by preponderance of evidence in custody dispute). Additionally, particularly in light of a parent's constitutional rights to direct the upbringing of their children, "the statutory presumption accords parents significant freedom to make decisions on behalf of their children, even when the wisdom of those decisions may be arguable," where the record does not contain evidence that the child is experiencing "imminent" detriment. *G. J. L.*, 244 Or App at 534.

Here, the record is devoid of evidence that C would suffer detriment, *i.e.*, that there was a serious present risk of psychological, emotional, or physical harm to C if grandmother were not to have visitation. As the trial court found, C is a "well-adjusted, mature young man," and mother is a very good parent. Those findings are consistent with Bourg's conclusions. Although the trial court concluded that mother and grandmother "hate" each other, there is no evidence in the record that, in the absence of a visitation order, their contentious relationship presents a risk of harm of the kind that ORS 109.119(4) requires; to the contrary, C seems to be "impervious to the negative things."

We also conclude that the trial court's finding that grandmother's visitation would not substantially interfere with mother's custodial relationship is unsupported by the evidence in the record. This factor includes both the number of visits and the extent to which there is evidence that the party seeking visitation has substantially interfered, or attempted to interfere, with the custodial relationship in the past. *Pulley*, 324 Or App 584. The court granted

grandmother, against mother's wishes, monthly weekend-long visitation, and two weeks of visits during the summer, including the ability to take C out of the country. *See G. J. L.*, 244 Or App at 533 (granting 49 days of visitation a year substantially interfered with parents' custodial relationship with the child). It is difficult to view that as anything other than relief that substantially interferes with mother's custodial relationship with her son.

Thus, of the five nonexclusive factors that a court may consider under ORS 109.119(4)(a), only one—that mother has unreasonably limited contact between C and his grandmother—weighs in grandmother's favor. The trial court did not find, and, as we have explained, the record does not support, that mother's decision to unreasonably limit contact caused C detriment of the type relevant to the legal issue before us. We appreciate that the factors are not exclusive, and "neither the statute nor the case law concerning it can provide a specific formula as to how much weight to give any particular factor." *Pulley*, 324 Or App at 587. Ultimately, given all of the circumstances, including that mother is a very good parent, grandmother has never been C's primary caretaker, and C will suffer no legally cognizable detriment in the absence of visitation, we conclude that the trial court erred in ruling that grandmother had adduced clear and convincing evidence that mother does not act in C's best interest.

Reversed.