Argued and submitted March 25, affirmed July 1, 2009

In the Matter of T. M.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

T. M.,
*Appellant.*

Multnomah County Circuit Court
070868965; A136826

211 P3d 359

Liza Jane Langford filed the brief for appellant.

Karla Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

In this mental commitment case, appellant contends that the state failed to prove that she suffers from a mental disorder that renders her a danger to herself and that she is unwilling, unable, or unlikely to participate in voluntary treatment. The state responds that it demonstrated that appellant suffers from depression and addiction to alcohol and prescription drugs and that, as a result, she recently attempted to commit suicide. That evidence, the state contends, sufficed to satisfy its burden of persuasion. Appellant's willingness to participate in voluntary treatment, the state argues, is up to her to prove, and she did not do so in this case. We agree with the state and affirm.

The relevant facts are not in dispute. Appellant is in her mid-40s. She was once licensed as a physician. She has a history of severe depression over a number of years and has attempted to commit suicide, by her own estimate, four or five times. Her most recent problems were precipitated by the death of her husband several years ago. She started using prescription opiates the day he died and became "very depressed." She became addicted to alcohol, as well. She attempted to commit suicide by taking an overdose of prescription medications in August 2006 and was hospitalized for approximately six weeks.

Meanwhile, appellant's drug use led to criminal charges in February 2007, for felony possession of a controlled substance and for tampering with drug records (apparently arising out of her attempts to forge prescriptions for her mother, who was deceased). The charges led to the suspension of her medical license and the loss of employment. It also led to her being ordered to participate in drug and alcohol treatment, which she did not complete.

In August 2007, worried that she would end up in jail because she did not comply with a court treatment order, appellant again attempted to commit suicide. On her way to a treatment session, she took amitriptyline and oxycodone and passed out on a sidewalk. She awoke in the hospital, in intensive care, where she remained for the next four days. When asked whether she was happy to be alive when she awoke, she replied, "At the time, no."

While appellant was hospitalized for her most recent suicide attempt, her sister discovered substantial quantities of prescription medications in appellant's house and vehicle. She found pills in plastic bags under appellant's mattress. She found bottles of prescription drugs made out to persons other than appellant. And she found a bottle of unidentified clear liquid and two syringes in a sock in a knitting bag.

At the commitment hearing, the trial court heard evidence of the foregoing facts. Appellant testified and acknowledged that, among other things, she was still "fragile" and "vulnerable" to continued drug use. She further testified that she possesses a gun at home and that she has contemplated using it to end her life. The court also considered the reports of two mental health examiners, both of whom concluded that appellant suffers from a mental disorder—"major depression with acute suicidality"—that causes her to be a danger to herself. The examiners found that appellant is at risk for future suicide attempts. The trial court found by clear and convincing evidence that appellant suffers from a mental disorder that causes her to be a danger to herself and that she is unwilling, unable, or unlikely to participate in treatment on a voluntary basis.

On appeal, appellant contends that the trial court erred in finding by clear and convincing evidence that, because of a mental disorder, she was a danger to herself. According to appellant, her most recent suicide attempt "was not a serious attempt at suicide, because it was not done in private. It was more a plea for help[.]" Moreover, she contends, even assuming that the incident was a genuine suicide attempt, there is no evidence that it was a product of a mental disorder. In appellant's view, "[t]he attempt could have been the product of [her] rational mind and a choice she made to avoid jail or to show the judge that he had better not threaten her or she will hurt herself." In the alternative, appellant contends that, even if the evidence shows that she suffers from a mental disorder that renders her a danger to herself, the state failed to demonstrate that she is unwilling to participate in voluntary treatment.

To resolve the matters that appellant has raised, we first review the requirements of the civil commitment statutes. ORS 426.130(1) provides, in part:

"After hearing all of the evidence, and reviewing the findings of the examining persons, the court shall determine whether the person is mentally ill. If, in the opinion of the court, the person is:

"(a)   Not mentally ill, the person shall be discharged forthwith.

"(b)   Mentally ill based upon clear and convincing evidence, the court:

"(A)   Shall order the release of the individual and dismiss the case if:

"(i)   The mentally ill person is willing and able to participate in treatment on a voluntary basis; and

"(ii)   The court finds that the person will probably do so.

"(B)   May order conditional release * * *.

"(C)   May order commitment of the individual to the Department of Human Services for treatment if, in the opinion of the court, subparagraph (A) or (B) of this paragraph is not in the best interest of the mentally ill person."

■■   Broken down into more manageable components, an ORS 426.130(1) proceeding consists of two phases. In the first phase, the sole question is whether an individual is "mentally ill." For the purposes of ORS chapter 426, a "mentally ill person" is "a person who, because of a mental disorder," is, among other things, "[d]angerous to self or others." ORS 426.005(1)(d). The state bears the burden of proving that an individual is mentally ill by clear and convincing evidence. *See* ORS 426.130(1)(b). That requires evidence of "extraordinary persuasiveness." *State v. M. L. F.*, 220 Or App 629, 634, 188 P3d 368 (2008).

In the second phase, sometimes called the "dispositional" phase, the issue is what to do once the determination has been made that the individual is or is not mentally ill. If the court determines that the individual is *not* mentally ill, "the person shall be discharged forthwith." ORS 426.130(1)(a). If the court finds that the person *is* mentally ill, the statute offers three dispositional choices: (1) release and dismissal; (2) conditional release; or (3) civil commitment. ORS 426.130(1)(b).

■     With respect to the second, dispositional phase, the statute does not mention either a standard of proof or a burden of persuasion. Case law has filled the gap on the first of those two matters, holding that the standard is a preponderance of the evidence. *State v. Brenhuber*, 146 Or App 719, 722, 934 P2d 550 (1997) ("[W]e have held that in the dispositional phase of a mental commitment proceeding the proper standard of proof is a preponderance of the evidence."). On the second of the two matters, our cases are less clear, particularly when the dispositional question is whether to release and dismiss because an individual, although mentally ill, is willing to participate in voluntary treatment.

In some earlier cases, we have simply addressed whether the record shows that an individual is willing to participate in voluntary treatment, without addressing which party has the burden of persuasion. *E.g.*, *State v. Doe*, 116 Or App 18, 21-22, 840 P2d 727 (1992). More recently, in *State v. Rainbolt*, 184 Or App 661, 57 P3d 902 (2002), we assumed that it is the state that bears the burden of demonstrating that a mentally ill individual is *not* willing to participate in voluntary treatment. We did not offer any explanation for our assumption, but we did reverse an order of civil commitment because "the state did not prove by a preponderance of the evidence that appellant is unwilling or unable to cooperate with and benefit from voluntary treatment with the help of his family." *Id.* at 662. More recently still, in *State v. D. F.*, 211 Or App 181, 189-90, 154 P3d 141 (2007), and *State v. Lott*, 202 Or App 329, 337, 122 P3d 97 (2005), *rev den*, 340 Or 308 (2006), we observed that we may or may not have been correct in *Rainbolt* in assuming that it is the state that must prove that a mentally ill person is not willing to participate in voluntary treatment. But in both cases, because the record was sufficiently clear regardless of which party bears the burden of persuasion, we declined to address the matter.

We address that matter in this case, concluding that our assumption in *Rainbolt* was, in fact, incorrect.

■     We begin with the wording of ORS 426.130(1)(b)(A), which provides that the trial court must order the release of the individual and dismiss the case if the person "is willing and able to participate in treatment on a voluntary basis"

and the person "will probably do so." The phrasing is in the affirmative—"*is* willing and able" and "*will* probably do so." That suggests that it is the mentally ill person who is assumed to bear the burden of proving those facts. The state, which is seeking commitment and not release, would have no reason to attempt to prove that the mentally ill person *is* willing and able to participate in voluntary treatment and *will* probably do so.

■　　Consistent with that observation, the facts that a mentally ill person is willing and able to participate in voluntary treatment and probably will do so are not even mentioned as criteria for commitment. If the legislature had intended to require the state to prove the negative—that the mentally ill person is *not* willing and able to participate in voluntary treatment and is *not* likely to do so—as prerequisites to commitment, it could have done so. Instead, the legislature included those factors as prerequisites to release and dismissal, something that the mentally ill person presumably would seek. Ordinarily, the party seeking relief bears the burden of proving all facts necessary to obtain that relief. *See, e.g.*, OEC 305 ("A party has the burden of persuasion as to each fact the existence or nonexistence of which the law declares essential to the claim for relief or defense the party is asserting."); ORS 183.450(2) ("The burden of presenting evidence to support a fact or position in a contested case rests on the proponent of the fact or position."); *Benaman v. Andrews*, 213 Or App 467, 476, 162 P3d 280 (2007) (party seeking relief bears burden of proving facts on which that relief is conditioned). It would seem to follow that the legislature intended that, to obtain release and dismissal of a civil commitment, the mentally ill person must establish that he or she is willing to participate in voluntary treatment and will probably do so.

　　With the foregoing principles in mind, we turn to the evidence in this case, beginning with the question whether the state proved, by clear and convincing evidence, that appellant is mentally ill, that is, that she suffers from a mental disorder that causes her to be a danger to herself or to others. In this case, there appears to be no dispute that appellant suffers from a mental disorder, *viz.*, "major depression

with acute suicidality." The question is whether there is sufficient evidence that appellant is a danger to herself because of that mental disorder.

In previous cases, we have concluded that, to meet that burden, the state must show that an appellant's mental disorder either resulted in actual harm to herself or that the mental disorder "created situations likely to result in harm." *M. L. F.*, 220 Or App at 634. Although the threat of harm need not be immediate, it "must exist in the near future." *State v. Jacobson*, 142 Or App 371, 377, 922 P2d 670 (1996). An expressed desire to die, by itself, is not sufficient to meet that burden. *State v. Simon*, 180 Or App 255, 262-64, 42 P3d 374 (2002). Nor is the fact that an individual has attempted suicide years earlier. *State v. Puha*, 208 Or App 453, 465, 144 P3d 1044 (2006).

In this case, there is evidence that appellant has a lengthy history of depression and suicide attempts. The two most recent attempts were serious in nature. They resulted in sufficient actual physical harm to require treatment in intensive care and substantial periods of hospitalization. Following the most recent attempt, appellant commented that she was not happy to be alive. She admitted that she continued to be "fragile" and "vulnerable" to her addiction to prescription medications and that she had contemplated using a gun to end her life. Both examiners reported that, because of her mental disorder, appellant is a risk for future suicide attempts. On the basis of those facts, we conclude that the state has met its burden of proving, by clear and convincing evidence, that appellant is mentally ill.

We turn to the question of disposition. Appellant contends that the state failed to demonstrate that she is unwilling to and probably will not participate in voluntary treatment. As we have concluded, however, it is not the state's burden to make such a demonstration; rather, it is appellant's burden to prove by a preponderance of the evidence that, notwithstanding the trial court's determination that she is mentally ill, she should be released because she is affirmatively willing to participate in voluntary treatment and probably will do so.

In this case, there is little, if any, evidence that appellant is willing to participate in voluntary treatment. There is

some evidence that appellant expressed willingness to participate in treatment of her drug addiction, but there is none that she has ever voluntarily sought treatment for her depression or that she is interested in doing so now. We conclude that appellant did not meet her burden of demonstrating that she is willing to participate in voluntary treatment and that she will probably do so.

Affirmed.