Submitted January 6, affirmed October 24, 2012

In the Matter of J. S.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

J. S.,
*Appellant.*

Lane County Circuit Court
301105564; A148281

289 P3d 357

Rebecca Carter filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Justice J. Rillera, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Brewer, Judge, and Nakamoto, Judge.

BREWER, J.

**BREWER, J.**

Appellant appeals a judgment of involuntary civil commitment, ORS 426.130, arguing that the trial court erred in determining that he was unable to provide for his basic personal needs and is a danger to himself. The state concedes that it did not establish that appellant was unable to provide for his basic personal needs but argues that it proved that he was a danger to himself. As explained below, we conclude that the trial court correctly determined that appellant was a danger to himself.

Appellant asks us to exercise our discretion under ORS 19.415(3)(b) to review this case *de novo*, asserting as grounds that we historically have reviewed this type of case *de novo* and that the record is not extensive. We exercise discretion to review *de novo* only in exceptional cases. *See* ORAP 5.40(8)(c). Neither the volume of the record in this case nor the fact that civil commitment cases historically were decided under a different standard of review persuades us that this is an "exceptional case." Accordingly, we are bound by the trial court's factual findings that are supported by any evidence and review its legal conclusions for errors of law. ORAP 5.40(8)(c); *State v. R. E.*, 248 Or App 481, 483, 273 P3d 341 (2012).

On March 11, 2011, appellant's mother took him to a hospital emergency room for worsening paranoia and hallucinations after appellant had failed to take his prescribed array of six medications for a week and a half. Appellant had been prescribed medications to treat various medical and psychiatric conditions, including schizoaffective disorder, bipolar disorder, seizure disorder, psychotic illness secondary to a general medical condition, chronic renal disease, hyperparathyroidism, Vitamin D deficiency, and hypertension.

While in the emergency room, appellant suffered a seizure due to his failure to take an antiseizure medication. The hospital placed an involuntary hold on appellant. Appellant physically assaulted hospital staff, threatened staff and patients, and destroyed property. He exhibited a low frustration tolerance and demanded to leave the hospital. In addition, he reported auditory hallucinations commanding him to hurt himself and others. Appellant had

a lengthy history of inpatient mental health treatment due to similar issues concerning homicidal and suicidal ideation and problems with medications. During his stay in the hospital, appellant complied with his medication regime. However, he denied that he had threatened anyone and stated that he had been threatened, although he could not explain how or by whom.

At the commitment hearing, the psychiatrist who had been treating appellant testified that, if appellant did not take his medications, he would be in significant danger because his seizure disorder was complex, difficult to treat, and "fatal if untreated," due to the risk of a heart attack. The psychiatrist opined that appellant would not comply with treatment unless hospitalized; the psychiatrist expressed particular concern that appellant could not return home if released because his parents, with whom he had been living, had obtained a restraining order against him. As noted, the trial court found that appellant was unable to meet his basic needs and that he was a danger to himself. In particular, the court relied on appellant's seizure condition as a basis for the latter finding.

On appeal, appellant does not dispute that he suffers from a mental disorder. However, he argues that the state failed to prove that he was dangerous to himself, because there was a deficit of clear and convincing evidence that his "mental disorder would cause him * * * to engage in behavior that [was] likely to result in physical harm to himself * * * in the near term." *State v. Olsen*, 208 Or App 686, 691, 145 P3d 350 (2006). Appellant asserts that, at the time of the commitment hearing, he was compliant with his medications, there was no evidence that he would not take the medications if released from the hospital and, thus, the state had not proved that he likely would suffer physical harm in the near term if he were to be released. We disagree.

In cases involving a person with a mental disorder who has not been taking medication for a physical condition, we have reversed judgments of commitment where the record did not disclose the nature or severity of the appellant's physical condition or that the appellant would suffer in the near future from continued refusal to

take medication. *See State v. M. L. F.*, 220 Or App 629, 634, 188 P3d 368 (2008) (record lacked expert medical testimony assessing the nature, severity, proximity, and likelihood of adverse physical consequences of the appellant's potential discontinuation of her anticoagulant medication based on her medical history and current condition); *State v. Hayes*, 202 Or App 63, 67, 121 P3d 17 (2005) (record did not disclose the nature or severity of the appellant's diabetes or the consequences that she would suffer in the near future from her continued refusal to take medication); *State v. Nguyen*, 180 Or App 541, 545, 43 P2d 1218 (2002) (no evidence that the appellant's diabetes was life threatening or immediately harmful to him; no evidence that the appellant had failed to seek medical treatment when necessary).

This case, however, is different. Although appellant took his medications while he was in the hospital, that evidence must be considered in light of countervailing evidence. In particular, that evidence showed that appellant's failure to take his seizure medications could result in a fatal heart attack, that appellant had stopped taking his medications before being hospitalized, and, indeed, had suffered a seizure while in the hospital, and that, in part because appellant would be unable to return to his parent's home, his treating psychiatrist opined that he would not comply with treatment if he were released. We conclude, on this record, that the trial court did not err in finding by clear and convincing evidence that appellant posed a danger to himself.

Affirmed.