Submitted October 15, 2014, affirmed January 22, 2015

In the Matter of T. C.,
Alleged to be a Mentally Ill Person.

## STATE OF OREGON,
*Respondent,*

*v.*

## T. C.,
*Appellant.*

Clackamas County Circuit Court
M1312009; A156109

342 P3d 1112

Gay Canaday submitted the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Carolyn Alexander, Senior Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and Hadlock, Judge, and Wollheim, Senior Judge.

HADLOCK, J.

**HADLOCK, J.**

Appellant seeks reversal of an involuntary-commitment order entered pursuant to the provisions of ORS chapter 426. Appellant does not contest the trial court's determination that he is mentally ill, but argues that the court erred by ordering him to be committed to the Oregon Health Authority instead of ordering that he be conditionally released to his wife's care. In response, the state contends that appellant did not meet his burden of proving either that his wife could care for him or that conditional release was in his best interest. In evaluating those arguments, "we are bound by the trial court's factual findings that are supported by any evidence and [we] review its legal conclusions for errors of law." *State v. J. S.*, 253 Or App 119, 120, 289 P3d 357 (2012). For the reasons set forth below, we affirm.

We begin by describing pertinent aspects of the statutes that govern involuntary-commitment proceedings and a court's decision whether to order the commitment of a mentally ill person or, instead, to order a conditional release.[1] Because appellant was committed in 2013, our discussion relates to the statutes that were in effect at that time.[2]

ORS 426.130 (2011) sets forth the dispositional options—"release," a period of commitment with a "conditional release," and "commitment * * * to the Oregon Health Authority [OHA]"—that are available to a trial court that has determined, after a hearing, that a person is mentally ill:

"(1)　After hearing all of the evidence, and reviewing the findings of the examining persons, the court shall

---

[1] For purposes of ORS chapter 426, a person has a mental illness if the person has a mental disorder and, because of that disorder, is (1) "[d]angerous to self or others," (2) "[u]nable to provide for basic personal needs and is not receiving such care as is necessary for health or safety," or (3) a person who has "a chronic mental illness" and who meets certain other statutory criteria. ORS 426.005(1)(e) (2011). Here, the trial court determined that appellant suffers from a mental disorder and that, as a result, he is dangerous to himself. Appellant does not challenge that determination on appeal.

[2] The 2013 legislature amended various provisions of ORS chapter 426 including, as pertinent here, ORS 426.005, ORS 426.125, and ORS 426.130. Or Laws 2013, ch 360, §§ 15, 28, 30; Or Laws 2013, ch 737, § 6. Those amendments became effective on January 1, 2014, and they do not apply to this case.

determine whether the person is mentally ill. If, in the opinion of the court, the person is:

"* * * * *

"(b)   Mentally ill based upon clear and convincing evidence, the court:

"(A)   Shall order the release of the individual and dismiss the case if:

"(i)   The mentally ill person is willing and able to participate in treatment on a voluntary basis; and

"(ii)   The court finds that the person will probably do so.

"(B)   May order conditional release under this subparagraph subject to the qualifications and requirements under ORS 426.125. If the court orders conditional release under this subparagraph, the court shall establish a period of commitment for the conditional release.

"(C)   May order commitment of the individual to the Oregon Health Authority for treatment if, in the opinion of the court, subparagraph (A) or (B) of this paragraph is not in the best interest of the mentally ill person."

*See State v. T. M.*, 229 Or App 325, 329, 211 P3d 359 (2009) (explaining in shorthand terms that, if a trial court determines that an individual is mentally ill, ORS 426.130(1)(b) offers three dispositional choices: "(1) release and dismissal; (2) conditional release; or (3) civil commitment").

ORS 426.125 (2011) more specifically addresses the dispositional option that appellant contends the trial court should have chosen here: a period of commitment with a conditional release. That statute, which describes various "qualifications, requirements and other provisions relating to a conditional release under ORS 426.130," provides, in part:

"(1)   A court may only order conditional release if all of the following occur:

"(a)   The conditional release is requested by the legal guardian, relative or friend of the mentally ill person.

"(b)   The person requesting the conditional release requests to be allowed to care for the mentally ill person

during the period of commitment in a place satisfactory to the judge.

"(c) The person requesting the release establishes all of the following to the satisfaction of the court:

"(A) Ability to care for the mentally ill person.

"(B) That there are adequate financial resources available for the care of the mentally ill person."

We turn, briefly, to the facts of this case. Appellant suffers from a major depressive disorder, has repeatedly made suicide attempts that resulted in hospitalization, including multiple suicide attempts in the three months preceding the commitment hearing, and he stated in the days leading up to the hearing that he still wanted to kill himself. Indeed, he told one mental health examiner that he would attempt suicide again if he were released from the hospital. Nonetheless, appellant requested at the commitment hearing that he be conditionally released to his wife's care, rather than committed to the OHA. Appellant's wife testified that she would care for appellant in their home if he were released and would keep him away from knives, alcohol, and drugs (appellant had attempted suicide both by overdosing and by cutting himself). She acknowledged, however, that she would sometimes have to be away from home to attend various appointments; she explained that she would arrange for somebody from her church to stay with appellant at those times.

The trial court declined to order conditional release and explained on the record why it had decided to commit appellant to the OHA instead:

"The least restrictive decision would be *** to release you on a conditional release, like your attorney suggested, and there is no doubt that [appellant's wife] would like to have you home, and she would do everything in her power to keep you safe.

"But in my view you are no better off than you were a couple of weeks ago when you attempted to commit suicide. I just don't think she is able to overcome the problems that you face. I think you have made some good progress while you are here. You have stabilized to some degree. I think you need tools to make it. I am hoping you will be released

on a home visit as soon as you gain enough tools to make it happen.

"I don't think we are ready at this point for a conditional release. So I am going to commit [appellant] to the care and custody of the Oregon Health Authority for up to 180 days. I think with a little more structure, a few more tools, that you can go home. But it is not the time now. I am not asking you to agree with me, but I think that's a correct legal decision."

On appeal, appellant does not challenge the trial court's determination that he is mentally ill. Rather, he argues only that the trial court erred in ordering commitment to the OHA rather than ordering conditional release. In that regard, appellant asserts that his wife was able and "willing to care for him in their home" and that the trial court could have imposed conditions on the conditional release, such as "proscrib[ing] any access to knives, alcohol, and non-prescribed drugs and could have insisted on strict compliance with a medication regimen and visits to a mental health professional." In response, the state asserts both that "appellant failed to establish that his wife *** was able to care for him, as required by ORS 426.125(1)(c)(A)" and that, "as the trial court correctly determined, conditional release was not in appellant's best interest. ORS 426.130(1)(a)(C)."

As the state's arguments suggest, ORS chapter 426 gives trial courts some discretion in determining what disposition is most appropriate for a person who has a mental illness. As pertinent here, a court "[m]ay order conditional release" of a mentally ill person if the requirements of ORS 426.125 are satisfied. ORS 426.130(1)(b)(B). The person requesting conditional release has the burden of persuading the court, by a preponderance of the evidence, that those requirements have been met. *See* ORS 426.125(1) (2011) ("A court may only order conditional release if all of the following occur: *** (c) The person requesting the release establishes all of the following to the satisfaction of the court: ***."); *State v. Brenhuber*, 146 Or App 719, 722, 934 P2d 550 (1997) ("[I]n the dispositional phase of a mental commitment proceeding the proper standard of proof is a preponderance of the evidence."). Alternatively, even if a mentally ill person

otherwise would qualify for conditional release under ORS 426.125, the court "[m]ay order" that the person be committed to the OHA if the court believes that conditional release is not in the person's best interest. ORS 426.130(1)(b)(C).

The trial court did not specify whether it was denying conditional release because it was not persuaded that appellant's wife could care for him, as ORS 426.125(1)(c)(A) requires, or because it determined, pursuant to ORS 426.130(1)(b)(C), that conditional release was not in appellant's best interest. The trial court's findings that appellant's wife was not "able to overcome the problems" that appellant faces, that appellant did not yet have the "tools" he would need "to make it" on a home visit, and that "we are [not] ready at this point for a conditional release" could be directed at either statutory provision. That ambiguity does not hinder our resolution of this appeal, however, because the record supports both of the paths that the court may have taken in deciding to commit appellant rather than conditionally release him to his wife's care.

Turning to the first possible rationale, the person requesting conditional release has the burden of proving "to the satisfaction of the court" that the requirements of ORS 426.125(1)(c) are met, including that the person has the "[a]bility to care for the mentally ill person." ORS 426.125(1)(c)(A). Here, the record supports a determination that appellant's wife would not be able to care for him, which, in this context, means that she would not be able to prevent him from trying to kill himself. The record is replete with evidence that appellant is at high risk for attempting suicide again; indeed, his suicide attempts have been "increasing in severity." In addition, appellant had been receiving mental health treatment before his most recent hospitalization, yet apparently "never contacted his mental health provider or the crisis line" before his suicide attempts. Thus, an examiner observed, appellant had "had extensive opportunity to participate in community treatment, but [had] not followed through." That examiner, who did not believe that appellant should be released to his wife's care, found it to be "[o]f great concern * * * that he does not call his counselor or the crisis line, either before or after a self-harm act."

Not only did appellant not reach out to mental health professionals before he tried to commit suicide, he also "never spoke to" his wife before he attempted to kill himself. In addition, at least some of appellant's suicide attempts occurred at home, and appellant's wife acknowledged that one attempt occurred while she was in the house. A mental health examiner explained why, given those circumstances, she did not believe that it was feasible for appellant's wife to care for appellant:

> "I don't think it is plausible for his wife or anyone to be responsible for another person's life. There is absolutely no way she can be on her guard 24 hours a day. Even if she has someone come in, she will have to sleep sometime and he does not reach out. She has to guess what's happening. So I just don't feel that there is any way that he can be safe in the community."

In light of appellant's determined efforts to kill himself at home—even while his wife was there with him—the trial court reasonably could find that the "evidence [was] not sufficiently persuasive" to establish that appellant's wife would be able to care for him by preventing his attempts at suicide. *State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003) (explaining that an appellate court is "bound by a trial court's 'finding' that a party's evidence is not sufficiently persuasive"). As one examiner bluntly put it, "[I]t doesn't seem like that has worked in the past."

In sum, the evidence that appellant's wife wished to care for appellant in their home was not such that the trial court was compelled to find that she could keep him safe in that environment. *See id.* ("unless the evidence in a case is such that the trial court as finder of fact could decide a particular factual question in only one way," appellate courts are "equally bound by a trial court's acceptance or rejection of evidence"). Accordingly, to the extent that the trial court may have based its decision against conditional release on a determination that the ORS 426.125(1) requirements were not met, it did not err.

Nor did the court err if it based that decision on a determination, under ORS 426.130(1)(b)(C), that conditional release was not in appellant's best interest. Such a

determination would be amply supported by the evidence described above, which explains the court's expressed concerns that appellant did not yet have the "tools" to make it at home and that appellant's wife was not yet "able to overcome the problems" that he faced. Given the very real danger that appellant would kill himself if not under constant professional supervision, the court reasonably could determine that his interests would not be served by conditional release.

Affirmed.