Argued and submitted August 13, 2008, reversed and remanded with instructions
to grant relief February 25, 2009

DAVID LINCOLN PATTERSON,
*Plaintiff-Appellant,*

*v.*

John FOOTE,
District Attorney,
*Defendant-Respondent.*

Clackamas County Circuit Court
CV06050055; A133423

204 P3d 97

David T. Viuhkola argued the cause and filed the briefs for appellant.

Laura S. Anderson, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Schuman, Judge.

LANDAU, P. J.

## LANDAU, P. J.

In this case of first impression, petitioner appeals an order denying his petition for relief from the duty to report as a sex offender. The relevant statute requires the court to grant that relief if, among other things, a petitioner who was previously convicted of a single misdemeanor sex offense provides clear and convincing evidence that he has been rehabilitated and no longer constitutes a threat to public safety. Petitioner contends that he provided uncontroverted evidence that he has not reoffended in more than 10 years, that he successfully completed sex offender treatment, and that, in the view of the only expert to testify, his "recidivism risk is virtually nil." According to petitioner, he met his burden. The state responds that, even if the risk of reoffending is less than one percent, that represents *some* risk of harm and thus a basis for the trial court's finding that defendant has not been rehabilitated or poses a threat to public safety. We conclude that petitioner met his burden and that there is no basis for the trial court's determination that petitioner has not been rehabilitated or poses a threat to public safety. We therefore reverse and remand for entry of an order granting petitioner the relief he requests.

The relevant facts are undisputed. In 1993, petitioner pleaded guilty to a misdemeanor sex offense involving his 11-year-old daughter. He was sentenced to probation; one of his conditions of probation was that he obtain sex offender treatment. Petitioner also was required to register as a sex offender under ORS 181.596 and to make periodic reports as required by that statute.

Petitioner completed the required conditions of probation and was discharged from probation in 1996. In May 2006, he sought an order relieving him of the duty to report as a sex offender. *See former* ORS 181.600 (2005), *renumbered as* ORS 181.820 (2007).[1] The trial court held a hearing

---

[1] *Former* ORS 181.600 (2005), *renumbered as* ORS 181.820 (2007), provides:

"(1)(a) No sooner than 10 years after termination of supervision on probation, conditional release, parole or post-prison supervision, a person required to report under ORS 181.595, 181.596 or 181.597 may file a petition in the circuit court of the county in which the person resides for an order relieving the person of the duty to report if:

at which petitioner and a psychologist, Dr. Wollert, testified. Petitioner also offered in evidence a 1996 letter from Wollert to petitioner's probation officer and a 2006 letter from Wollert to petitioner's counsel in the current proceeding. Respondent, the district attorney of the county in which petitioner was residing, offered in evidence a 2006 letter from the victim, addressed "To Whom It May Concern."

Petitioner testified that he had successfully completed three years of sex offender treatment provided by Wollert; that he had paid all fines and fees and had paid for counseling for the victim and other family members; that he was continuing to support the victim financially; that he had no other criminal convictions; that he had complied with the applicable sex offender registration requirements; that he was active in his church; and that he "[v]ery much" regretted committing his offense against the victim.

---

"(A) The person has only one conviction for, or juvenile court finding of jurisdiction based on, a sex crime;

"(B) The sex crime was a misdemeanor or Class C felony or, if committed in another state, would have been a misdemeanor or Class C felony if committed in this state; and

"(C) The person has not been determined to be a predatory sex offender as described in ORS 181.585.

"(b) The district attorney of the county shall be named and served as the respondent in the petition.

"(2) The court shall hold a hearing on the petition. In determining whether to grant the relief requested, the court shall consider:

"(a) The nature of the offense that required reporting;

"(b) The age and number of victims;

"(c) The degree of violence involved in the offense;

"(d) Other criminal and relevant noncriminal behavior of the petitioner both before and after the conviction that required reporting;

"(e) The period of time during which the petitioner has not reoffended;

"(f) Whether the petitioner has successfully completed a court-approved sex offender treatment program; and

"(g) Any other relevant factors.

"(3) If the court is satisfied by clear and convincing evidence that the petitioner is rehabilitated and that the petitioner does not pose a threat to the safety of the public, the court shall enter an order relieving the petitioner of the duty to report. When the court enters an order under this subsection, the petitioner shall send a certified copy of the court order to the Department of State Police."

For convenience, in the remainder of this opinion we refer to the statute by its current number.

In his 1996 letter, Wollert informed petitioner's probation officer that petitioner had satisfied all the requirements of the treatment program. In his 2006 letter, Wollert noted that, while participating in treatment, petitioner had shown "much shame and remorse" and was a "very responsive and dedicated client," who fell in "the lowest risk group" of convicted sex offenders. Wollert stated that he believed that petitioner "does not represent a danger to public safety and that his recidivism risk is virtually nil, being less than one percent."

Wollert testified at the hearing that petitioner had participated in a sex offender treatment program for over three years following his conviction. Wollert opined that petitioner was a "very responsive client, very dedicated," that he was a "very active" and "strong" program participant who had completed all the requirements of the program, and that he had had no subsequent law violations other than a speeding ticket. Wollert also testified that individuals in the class of sex offender into which petitioner falls—"familial offender with one victim"—"have a very, very low recidivism rate." As to petitioner specifically, Wollert reiterated that his "risk of recidivism is nil; it's less than 1 percent." When asked whether he firmly believed that petitioner would never reoffend, Wollert responded, "I do."

As noted, the trial court also considered a letter from the victim. In that letter, the victim set out several reasons that, in her view, the court should deny the requested relief. She generally noted the "important issue of reoffending" and the fact that the reporting requirement permits law enforcement agencies to keep track of offenders. She also briefly described the long-term detrimental effects that petitioner's particular actions had had on her physical and psychological well-being. The victim stated her belief that the case had been "grossly mishandled" by the state, including the lack of a victim advocate, her inability to make an impact statement, the fact that her therapist at the time disclosed her communications to her parents, and the fact that petitioner was permitted to return to the family home, resulting in her being placed in foster care. The victim opined that petitioner had received "less than a slap on the wrist" for his offense and should not be relieved from the remaining requirement. She

stated that, notwithstanding any "argument about the present, it doesn't change his crime" and the lifelong consequences from which she suffers.

At the conclusion of the hearing, the trial court found that petitioner had not committed any subsequent crimes and that he had successfully completed the court-approved sex offender treatment program. The court concluded that, although Wollert had testified that the possibility of petitioner reoffending was "less than 1 percent or nil," clear and convincing evidence nevertheless was lacking to show that petitioner was rehabilitated and did not pose a threat to the public. The trial court explained that it was "concerned that [Wollert] gives any percentage of the possibility of reoffending, even if it's less than one percent." The court therefore denied relief.

On appeal, petitioner argues that he met his burden to show by clear and convincing evidence that he is rehabilitated and does not pose a threat to public safety and that, accordingly, the trial court erred in denying relief. Petitioner relies in part on Wollert's testimony that there was virtually no chance of his reoffending. He also argues that the trial court misconstrued ORS 181.820. According to petitioner, the plain meanings of the terms "rehabilitate" and "threat" in that statute demonstrate that the legislature did not intend to require a sex offender to establish that there was no possibility whatsoever that he or she would reoffend. Based on what he deems to be the equitable nature of the relief sought, the fact that the legislature imposed a "clear and convincing evidence" standard of proof, and the fact that the legislature allocated the factfinding role to the trial court, petitioner urges us to review the record *de novo* and reverse the trial court's order.

In regard to this court's standard of review, respondent agrees with petitioner that we construe the meaning of ORS 181.820 as a matter of law. Respondent argues, however, that, because the statute establishes a special statutory proceeding, under ORS 19.205(5), ORS 19.415, and Article VII (Amended), section 3, of the Oregon Constitution, we review the trial court's factual findings for "any evidence" supporting the facts at issue. Finally, pointing to the use of

the word "satisfied" in ORS 181.820, respondent argues that this court reviews the trial court's decision in the case for an abuse of discretion. Respondent argues that, in light of the nature of the crime, the victim's letter to the court, and the possibility—however small—that petitioner might reoffend, the trial court did not abuse its discretion in determining that petitioner did not qualify for relief.

■      The appellate courts of this state have not previously reviewed an order entered under *former* ORS 181.600 (2005) or ORS 181.820. We first consider our standard of review—more precisely, we attempt to determine what standard of review the legislature intended for us to apply. We do so by considering the text and context of the statute; if those features do not disclose the legislature's intent, we consider the statute's legislative history and relevant maxims of statutory construction. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

Again, under ORS 181.820, if the trial court "is satisfied by clear and convincing evidence" that a petitioner has met the required conditions for relief from the reporting requirement, the trial court "shall" enter the relevant order. The use of the word "shall" strongly suggests that the issuance of the order is not a matter of trial court discretion. *See Pendleton School Dist. v. State of Oregon*, 345 Or 596, 607, 200 P3d 133 (2009) (use of the word "shall" in constitutional provision at issue signifies "a directive or a command that states a requirement"); *State v. Langan*, 301 Or 1, 10, 718 P2d 719 (1986) (use of word "shall" in statute providing for trial court order setting aside conviction indicated that, if statutory criteria were met, trial court was required to enter the requested order). Moreover, whether the evidence below met the requisite clear and convincing standard of proof as to the relevant preconditions for relief is a legal determination that we review for legal error. *Delgado v. Souders*, 334 Or 122, 134-35, 46 P3d 729 (2002) (whether a party has met its burden of proof is reviewed as a matter of law). Taken together, those aspects of ORS 181.820 suggest to us that, on review of the trial court's order, we determine as a matter of law whether, on this record, the trial court reached the correct result.

The Supreme Court's decision in *Langan* is especially instructive in that regard. In that case, the defendant, a tavern owner, had been convicted of promoting gambling, in violation of ORS 165.122. Four years later, he moved for an order setting aside his conviction as provided in ORS 137.225. Under that statute, after a specified time period, a defendant who has "fully complied with and performed the sentence of the court" may apply for such an order. If the trial court "determines that the circumstances and behavior of the applicant from the date of conviction * * * to the date of the hearing on the motion warrant setting aside the conviction, * * * it shall enter an appropriate order." The trial court held a hearing on the defendant's motion, at which the primary issue was whether, subsequent to his conviction, the defendant had acted unlawfully by continuing to sell playing cards to his tavern patrons; according to the state's evidence, a police officer had advised the defendant that that conduct was unlawful, and the defendant had ignored that advice. Based primarily on that evidence, the trial court denied the defendant's motion to set aside his conviction. *Langan*, 301 Or at 3-4.

On appeal, the Supreme Court noted that it was the defendant's burden to show that he met the criteria set out in the statute. *Id.* at 5, 10. The Supreme Court also determined that the statutory reference to a defendant's "behavior" was intended to capture primarily a defendant's compliance with criminal laws. *Id.* at 9-10. The court explained that, consistently with ORS 137.225, if a defendant meets his or her burden to show that he or she had not engaged in any disqualifying behavior, the trial court "shall" enter the order; based on that textual feature of the statute, the court expressly rejected the state's argument that the trial court had "discretion" whether to set aside a conviction regardless of the state of the record. *Id.* at 7-8, 10. Applying those legal standards, the court determined that, in denying the defendant's motion, the trial court had erred in relying on the state's evidence that the defendant did not accept a police officer's mere "advice" that selling playing cards was an illegal activity. The Supreme Court therefore reversed and remanded for further proceedings. *Id.* at 10-11.

This case is directly analogous to *Langan*. As in that case, defendant here had the burden to show that he met the criteria in a statute, in this case, ORS 181.820(3). And, as in *Langan*, the use of the word "shall" in that statute indicates that, if defendant met that burden, the trial court was required to issue the relevant order.[2]

■    We turn, then, to the nature of the burden that petitioner was required to meet. Again, under ORS 181.820, petitioner was required to demonstrate by clear and convincing evidence that he is rehabilitated and does not pose a threat to public safety. The "clear and convincing evidence" standard requires evidence of extraordinary persuasiveness—that is, evidence establishing that the truth of the facts in issue is highly probable. *State v. M. L. F.*, 220 Or App 629, 634, 188 P3d 368 (2008).

■    The question that remains is what the statute requires when it states that a petitioner must prove by clear and convincing evidence that he or she is "rehabilitated" and does not pose a "threat to the safety of the public." The state contends that the statute requires that a petitioner must prove an absolute absence of any possibility that he or she will reoffend. According to the state, *any risk*, "regardless of how small," precludes granting relief under the statute. We find no such requirement in the statute.

As pertinent here, the verb "rehabilitate" means "to restore to a useful and constructive place in society" and "to

---

[2] In interesting contrast to *Langan* is the Supreme Court's decision in *State v. Langley*, 314 Or 247, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993). That case involved the review of a trial court's denial of a motion to change venue under ORS 131.355, which provides that the court "shall" order a change of venue, "if the court is satisfied" that the potential for prejudice interferes with the right of the defendant to obtain a fair and impartial trial. The court stated that the standard of review of a decision under that statute was abuse of discretion. 314 Or at 260. There was no discussion, only a citation to *State v. Little*, 249 Or 297, 312, 431 P2d 810, *cert den*, 390 US 955 (1968), a case decided under an earlier version of the statute, which provided that a trial court "may" order a change of venue in certain circumstances. *Former* ORS 131.420 (1967). In our view, this case is much more like *Langan* than *Langley*. This case—like *Langan* and unlike *Langley*—involves review of a trial court's determination whether petitioner met a specified burden of proof, which is always a question of law. In any event, the trial court's decision in this case was expressly based not on an exercise of discretion, but on the court's determination that ORS 181.820 requires a petitioner to demonstrate an absolute absence of any risk of future harm. That is a question of law.

put on a proper basis or into a previous good state." *Webster's Third New Int'l Dictionary* 1914 (unabridged ed 2002). The noun "rehabilitation" means "the process of restoring an individual (as a convict * * *) to a useful and constructive place in society through some form of * * * correctional or therapeutic retraining." *Id.* Nothing in the ordinary meaning of the term suggests that, to be "rehabilitated," an individual must establish that he or she is now absolutely free of *any* risk—however small—of future error.

It is worth noting that "rehabilitate" is a term that the legislature has employed in a number of different contexts. *See* ORS 135.891 (setting out requirements for diversions, including "participation in programs offering medical, educational, vocational, social and psychological services, corrective and preventive guidance and other rehabilitative services"); ORS 135.980 (pertaining to the maintenance of a directory of "rehabilitative programs," defined in part as programs designed to treat alcohol and drug abuse, to prevent criminal sexual behavior, or to modify a propensity to commit crimes, among other purposes); ORS 421.155 (persons sentenced as dangerous offenders "shall be given such physical, mental and psychiatric observation and treatment as is available and may tend to rehabilitate such person"); ORS 420A.005 (pertaining to youth offenders; defining "cognitive restructuring" as "any rehabilitation process that redirects the thinking of an offender into more socially acceptable directions and that is generally accepted by rehabilitation professionals" and defining "reformation plan" in part as "a plan for medical, educational, vocational, social and psychological services and training as well as other rehabilitative services designed to reduce future criminal and antisocial conduct").

In none of those contexts is "rehabilitate" used in the sense that the state suggests in this case, that is, an absolute guarantee of future perfection. *Cf., e.g., In re Knappenberger*, 344 Or 559, 577, 186 P3d 272 (2008) (term "rehabilitation" refers to steps taken to prevent recurrence of unlawful conduct); *In re Covington*, 334 Or 376, 382-87, 50 P3d 233 (2002) (applicant for admission to state bar who had history of drug and alcohol abuse failed to demonstrate by clear and convincing evidence that he was rehabilitated; evidence that he had

taken responsibility for his prior conduct and had completed various treatment programs was outweighed by psychologist's opinion that applicant nevertheless remained at risk for relapse); *State ex rel SOSCF v. Stillman*, 333 Or 135, 141, 36 P3d 490 (2001) (in context of proceeding to terminate parental rights, evidence that a parent "had made progress in rehabilitation" included evidence that he had completed a drug treatment program and various classes, had modified his resistant attitude, had taken responsibility for the consequences of his unlawful behavior, and had engaged in various constructive activities); *State v. Dillon*, 292 Or 172, 179, 637 P3d 602 (1981) (restitution is "intended to serve rehabilitative and deterrent purposes by causing a defendant to appreciate the relationship between his criminal activity and the damage suffered by the victim").

The requirement that the petitioner prove that he or she no longer poses a "threat to the safety of the public" likewise provides no support for the state's insistence upon proof of a complete and total absence of a risk of reoffense. The term "threat" ordinarily refers to "an indication of something *impending* and usu. undesirable or unpleasant." *Webster's* at 2382 (emphasis added). The word "impending," in turn, means something "that is about to occur : imminent." *Id.* at 1132. Likewise, the verb "impend" means "to threaten from near at hand or as in the immediate future * * * to be imminent : give promise of occurring in the immediate future." *Id.* A "threat," in other words, ordinarily refers to something that is *likely* to occur, and sooner rather than later. *See, e.g., State v. Hall*, 327 Or 568, 573, 966 P2d 208 (1998) (ordinary dictionary definition of "threat" implies immediacy). In no way does the legislature's use of the term in ORS 181.820 support the suggestion that any risk of reoffense, however remote, is sufficient to defeat a petitioner's request for relief under the statute.

■    Thus, consistently with the applicable standard of proof and the plain meaning of the terms "rehabilitated" and "threat" to public safety, we understand ORS 181.820 to require a petitioner for relief from the sex offender reporting requirement to demonstrate by clear and convincing evidence that he or she has successfully completed programs or

services designed to ameliorate his or her previous behavioral and psychological patterns and to prevent a recurrence of unlawful conduct, and that, as a result, the petitioner does not present a threat, that is, he or she is not likely to reoffend.

■ On this record, we conclude that petitioner met his burden. As we have noted, there was evidence at the hearing that petitioner had successfully completed three years of sex offender treatment, that he was remorseful regarding his crime, and that he currently was leading a law-abiding and socially constructive life. Petitioner's witness, Wollert, testified that petitioner's "risk of recidivism is nil; it's less than 1 percent." When asked whether he "firmly believe[d]" that petitioner will never reoffend, Wollert responded, "I do."

Moreover, there is a complete absence of evidence to the contrary, either factual or in the form of an opinion. The only evidence that the state offered was the victim's letter. The problem is that the letter provided no information pertinent to the ultimate criteria for obtaining relief, *viz.*, that the petitioner is rehabilitated and does not pose a threat to public safety. By its terms, the letter addressed the effects of petitioner's offense on the victim, as well as the effects of such offenses on victims generally. It did not purport to provide any information about petitioner's efforts to rehabilitate himself or his present circumstances; indeed, it expressly disavowed the necessity for doing so.

We therefore conclude that the trial court erred in determining that petitioner had failed to meet his burden to show, by clear and convincing evidence, that he was rehabilitated and did not pose a threat to public safety. It follows that the trial court erred in denying the requested relief. We therefore reverse and remand with instructions to enter an order relieving petitioner of the duty to report as a sex offender.

Reversed and remanded with instructions to grant relief.