Argued and submitted March 31, judgment provision granting Husk access to child's medical and education records reversed, otherwise affirmed October 5, 2016

Laura Jo HUSK,
*Petitioner-Respondent,*

*v.*

Alice ADELMAN,
*Respondent-Appellant.*

Multnomah County Circuit Court
130970404; A158504

383 P3d 961

Mark Kramer argued the cause for appellant. With him on the briefs was Kramer & Associates.

Kimberly A. Quach argued the cause for respondent. With her on the brief was Lechman-Su & Quach, PC.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## ORTEGA, P. J.

Adelman, the legal parent of child, G, appeals a judgment awarding Husk (Adelman's former partner) visitation with G. The court determined that Husk had established an "ongoing personal relationship" with G and ordered visitation as allowed by ORS 109.119.[1] We write to address Adelman's first two assignments of error, challenging the visitation plan, and reject Adelman's third assignment of error, challenging the court's award of attorney fees to Husk, without written discussion. As explained below, we affirm the visitation plan, but reverse the portion of the judgment that required Adelman to provide records to Husk.

Although Adelman asks for *de novo* review, we decline to exercise our discretion to apply such review. *See* ORS 19.415(3)(b) (in equitable proceedings, we "may try the cause anew upon the record or make one or more factual findings anew upon the record"); ORAP 5.40(8)(c) (we will exercise our discretion to review *de novo* only in exceptional cases). Accordingly, "'we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome.'" *Kleinsasser and Lopes*, 265 Or App 195, 198, 333 P3d 1239 (2014) (quoting *Dept. of Human Services v. N. P.*, 257 Or App 633, 639-40, 307 P3d 444 (2013)). We state the facts consistently with that standard.

Adelman and Husk were in a long-term relationship and, in 2005, decided to adopt a child together. However, because they were a lesbian couple, Adelman applied for an international adoption as a single woman, culminating in her legal adoption of G in 2006. Although the parties dispute the status of their relationship following the adoption, the evidence established that they co-parented G during his early years. When Adelman informed Husk that she wished

---

[1] ORS 109.119(1) provides that any person "who has established emotional ties creating * * * an ongoing personal relationship with a child may petition or file a motion for intervention with the court having jurisdiction over the custody, placement or guardianship of that child, or if no such proceedings are pending, may petition the court for the county in which the child resides, for an order providing for relief under subsection (3) of this section."

to end their relationship in early 2010, Husk continued to have a child-parent relationship with G.

Over time, however, Adelman began to limit the amount of time that she would allow Husk to visit with G, asserting that Husk's visitation requests exceeded what was reasonable and appropriate. In 2011, given the parties' disagreements, they turned to mediation to establish a parenting plan. That process resulted in an agreement that granted Husk substantial visitation rights, as well as access to G's medical and education records. The parties adhered to that "mediated parenting plan" until 2013, when Adelman again began to limit Husk's visits and cut some of them short. Adelman asserts that she did so in response to G's changing schedule and needs. At that point, communication between Husk and Adelman deteriorated significantly, prompting Husk to file the petition for visitation rights that is the subject of this appeal.

After hearing testimony from the parties and expert witnesses, the trial court entered a temporary order directing the parties to continue visitation similar to what the parties had agreed upon in their earlier parenting plan. Then, after a trial in 2014, the court set out in the judgment that it had determined that a court-ordered visitation plan was warranted because (1) Husk had an "ongoing personal relationship" with G; (2) Husk had rebutted the presumption that Adelman acted in G's best interests by curtailing Husk's visitation with G, and (3) awarding visitation to Husk was in G's best interests. In concluding that Husk had rebutted the presumption that Adelman acted in G's best interests, the court considered the following factors:

"A. The testimony of Husk's expert witness, Dr. Adam Furchner, as well as Adelman's expert, Dr. Harry Dudley, supports Husk's contention that circumstances detrimental to the child exist if relief is denied;

"B. Adelman has fostered, encouraged, and consented to the relationship between [G] and Husk;

"C. Granting the relief Husk requests will not substantially interfere with the custodial relationship between Adelman and [G];

"D.  Adelman has unreasonably limited contact between [G] and Husk; [and]

"E.  Adelman is unlikely to grant consistent, regular visitation without a court-ordered plan."

Although the court's precise weighing of those factors is unclear, it is evident that the court weighed the last two factors heavily. The court had found at an earlier oral hearing that Adelman's attempts to limit visitation between Husk and G had primarily been motivated by her own interests, rather than G's. At the end of trial, it concluded that a court-mandated visitation plan was necessary because it did not believe that there would be a regular schedule absent such an order, given how differently the parties perceived and approached the situation.

The court then directed the parties to work together to devise a mutually agreeable visitation plan, reasoning that the parties were in a better position to do so than was the court. The court also ordered Adelman to provide Husk with G's medical and education records in a "timely fashion." After allowing time for the parties to devise a visitation schedule, the court adopted a final judgment. That judgment afforded Husk overnight and holiday visitation rights similar to what the parties had previously agreed to in mediation.

ORS 109.119 provides a clear roadmap of the necessary requirements for granting visitation or contact rights to a nonparent. A petitioner must first establish the existence of an ongoing personal relationship with a child. ORS 109.119(1), (3)(b). If the petitioner establishes such a relationship, then he or she must rebut the statutory presumption that a legal parent acts in the best interest of the child by clear and convincing evidence. ORS 109.119(2)(a), (3)(b); *see Kennison v. Dyke*, 280 Or App 121, 125, 376 P3d 301 (2016) (so stating). Finally, if a petitioner is successful in rebutting that presumption, then the court "shall grant" visitation or contact rights if to do so is in the best interests of the child. ORS 109.119(3)(b). In this case, because Adelman concedes that Husk had an ongoing personal relationship

with G,[2] we address only the last two steps, which correspond with Adelman's first and second assignments of error, respectively.

In her first assignment, Adelman contends that the trial court erred by concluding that Husk rebutted the statutory presumption that Adelman, as the legal parent, acted in the best interest of G when she restricted Husk's visits with him. In doing so, she challenges the sufficiency of the evidence for each of the statutory factors considered by the court, arguing that the evidence fails to meet the "clear and convincing" standard. Husk, in turn, maintains that the evidence was sufficient to support each of the statutory factors such that Husk rebutted the presumption that Adelman acted in the child's best interest by restricting her visitation with G.

Before considering the parties' arguments, we pause to address our standard of review. In doing so, we begin by clarifying the trial court's duty under ORS 109.119. As noted, once a petitioner has established an ongoing relationship with a child, he or she must present evidence to rebut the presumption that the legal parent has acted in the child's best interest. Accordingly, the trial court's duty is to determine whether the petitioner has met that burden, and, in doing so, the court must complete two related tasks: (1) it must make findings of fact as to the evidence presented and (2) it must determine whether those factual findings, when viewed as a whole, constitute clear and convincing evidence that the presumption in favor of the legal parent was rebutted. ORS 109.119(2)(b) ("In an order granting relief under this section, the court shall include findings of fact supporting the rebuttal of the presumption[.]"); *O'Donnell-Lamont and Lamont*, 337 Or 86, 109, 91 P3d 721 (2004), *cert den*, 543 US 1050 (2005) (the focus of ORS 109.119 "is not on whether one or more of the statutory factors are present, but on whether the evidence as a whole is sufficient to overcome the presumption

---

[2] The trial court found that Husk formerly had a child-parent relationship with G within the meaning of the statute, which requires having either physical custody or residing in the same household. *See* ORS 109.119(10)(a). However, the statute also requires that those characteristics occur within six months of filing the petition, which was not true in this case. *Id.* The parties agreed, and the trial court found, that Husk had an ongoing personal relationship.

that the parent acts in the best interest of the child").[3] The clear and convincing standard of proof simply refers to the "degree of certainty that must exist in the mind" of the trial court regarding its ultimate determination. *See State v. J. D. S.*, 242 Or App 445, 447, 263 P3d 1017 (2011); *see also Burton v. Bd. of Dental Examiners*, 31 Or App 1045, 1047, 571 P2d 1295 (1977), *rev den*, 282 Or 1 (1978).

On appeal, we emphasize that, because we are not undertaking *de novo* review, we do not endeavor to make our own findings of fact or to determine for ourselves whether Husk rebutted the presumption that Adelman acted in G's best interest. Rather, our appellate function is limited to resolving whether there was sufficient evidence for the *trial court*, sitting as the trier of fact, to have made the required findings and determination. *See Kleinsasser*, 265 Or App at 198 (adopting the standard of review set forth in *N. P.*); *see also Southard and Larkins*, 275 Or App 538, 543, 365 P3d 1089 (2015), *rev den*, 359 Or 39 (2016) (same). Accordingly, we first examine the trial court's findings of fact, reviewing for any evidence that supports those findings. *See Noriega v. Parsons*, 253 Or App 768, 770, 296 P3d 522 (2012) (findings of fact reviewed for "any evidence"). Second, we take the factual findings that are supported by the evidence and assess whether, based on those facts, the court had a sufficient basis to conclude that the presumption was rebutted by clear and convincing evidence. *See* ORS 109.119(3)(b) (indicating the standard of proof to be applied by the trial court); *cf. J. D. S.*, 242 Or App at 448 (indicating the standard of review on appeal).[4]

---

[3] In *O'Donnell-Lamont*, the court reviewed the application of ORS 109.119(3)(a), which applies to *custody* cases; however, because the language of ORS 109.119(3)(a) is nearly identical to the language of ORS 109.119(3)(b), which applies to *visitation* cases such as this one, we apply the Supreme Court's interpretation here.

[4] Adelman's appellate arguments assume, incorrectly, that each of the trial court's findings of fact had to be supported by clear and convincing evidence. As noted above, the clear and convincing standard of proof applies only to the court's ultimate determination. The court's subsidiary factual findings, including any findings related to the statutory factors outlined in ORS 109.119(4)(a)(A) - (E), need only be found by a preponderance of the evidence and, as noted, we review those findings for any evidence. That follows the Supreme Court's conclusion in *O'Donnell-Lamont* that "the focus of the statute * * * is not on whether one or more of the statutory factors are present, but on whether the evidence *as a whole* is

With the standard of review in mind, we turn to the merits of this case. A detailed recitation of the facts would not benefit the bench, the bar, or the public. Suffice it to say that, after reviewing the record, we are satisfied that there is evidence to support the court's findings of fact which, when taken together, support the court's ultimate determination that Husk rebutted, by clear and convincing evidence, the presumption that Adelman acted in G's best interest. We note in particular the ample evidence that Adelman unreasonably limited contact between G and Husk and that Adelman was unlikely to grant consistent, regular visitation without a court-ordered plan. Given the history between the parties, we conclude that the court could determine that Husk rebutted the presumption by clear and convincing evidence.

We next consider Adelman's second assignment of error, in which she contends that the court erred by concluding that it was in G's best interest to award Husk extensive visitation and to grant her access to G's medical and education records. She argues that, even if we conclude that the court did not err in finding that Husk rebutted the presumption, the court nonetheless erred by finding that it was in G's best interest to order the extensive visitation that it did. She claims that the plan ordered by the court resembles a "parenting plan afforded to a noncustodial parent" and argues that, if a plan must be implemented, it should be consistent with her earlier recommendation, which provided for only one overnight visit per month and one non-overnight visit per week. Furthermore, Adelman challenges the provision granting Husk access to G's medical and education records, claiming that it is a "clear violation of the *Troxel* [*v. Granville*, 530 US 57, 120 S Ct 2054, 147 L Ed 2d 49 (2000)] edict that a legal parent should be able to control the day-to-day affairs of a child without interference of the state[.]"

Husk argues in response that the visitation plan ordered by the court, which she asserts must be reviewed for

---

sufficient to overcome the presumption that the parent acts in the best interest of the child." 337 Or at 109 (emphasis added).

abuse of discretion, should be upheld. In particular, Husk argues that the court did not err in ordering Adelman to provide her with G's medical and education records in a "timely fashion," because Adelman had previously agreed to do so in the earlier mediation plan and, as such, she "waived a small part of her custodial rights in the mediated agreement."

Once more, ORS 109.119(3)(b) states, in part, "[T]he court *shall grant visitation or contact rights* to the person having the ongoing personal relationship, if *to do so is in the best interest of the child.*" (Emphases added.) We review the "best interest of the child" determination for abuse of discretion, relying on "the same facts involved in rebuttal of the parent's presumption." *Southard*, 275 Or App at 551. Thus, given "that deferential standard of review, we will reverse only if a trial court's discretionary determination is not a legally permissible one." *Id.* at 544 (internal quotation marks omitted).

In reviewing the court's visitation plan, we begin by addressing the provisions specifically concerning visitation. We understand Adelman's appellate arguments to challenge the extent of the visitation ordered, not the award of visitation in general. On that point, we note that, under ORS 109.119(3)(b), the court's role is not limited to determining whether visitation *in general* would be in the child's best interest. Rather, in reaching its "best interest of the child" determination, the court must also consider whether the *extent* of the visitation requested (or to be ordered) is in the child's best interests. *Cf. Jonte v. Adams*, 146 Or App 497, 501, 933 P2d 970 (1997) (in construing *former* ORS 109.121 (1997), a related predecessor statute to ORS 109.119, we stated that the petitioner "had the burden to persuade the court that visitation—and to what extent—would be in the best interests of [the] child").

In this case, having reviewed the record, we conclude that the extent of the visitation ordered by the court was within the range of legally permissible choices. By asserting that the visitation plan ordered by the court is "excessive" and interferes with her "custodial prerogatives," we understand Adelman's challenge as focusing on the impact of the

visitation plan on her custodial rights.[5] That argument fails for at least two reasons.

First, it does not consider that, in reviewing the court's determination, the focus is on whether the visitation plan is consistent with the child's best interests, not Adelman's custodial rights. That is, Adelman fails to address her argument to the proper statutory considerations. *See* ORS 109.119(3)(b) (providing for visitation "if to do so is in the best interest of the child").

Second, Adelman fails to address how the court abused its discretion in adopting the visitation plan that *she* (along with Husk) presented to the court, and she does not explain how or why the visitation ordered is not in G's best interests. The court urged the parties to devise a mutually agreeable visitation plan rather than leaving it to the court to devise a plan, and advised them that it would be helpful for them to consult with G's therapist to "maybe problem-solve with him and try to figure out what—what would be best for [G]." The record indicates that the plan the court adopted reflects input from both parties, with only minor objections from Adelman; Adelman points to no evidence to suggest either to us or to the trial court that the plan is not in G's best interests. Thus, the court exercised allowable discretion in ordering the visitation plan that it did.

Finally, we consider whether the court abused its discretion in ordering that Husk receive access to G's medical and education records. We conclude that it did, because the court did not have the authority, under ORS 109.119(3)(b), to grant rights outside the scope of "visitation or contact rights." Notably, the court acknowledged that it did not have such authority, stating:

> "Husk has also asked for what we call *noncustodial parent's rights*, and it's specifically asking for rights to equal

---

[5] Adelman references *Troxel* in her arguments but stops short of challenging the constitutionality of ORS 109.119 directly. Rather, she appears to raise an as-applied challenge, relying on the general principles identified in *Troxel* that afford some weight to a parent's custodial interests. To the extent that Adelman indeed raises such a challenge, we reject it. *Cf. O'Donnell-Lamont*, 337 Or at 120 (when ORS 109.119 is applied properly and the presumption in favor of the legal parent has been rebutted, the statute provides the required deference to a parent's due process rights).

access to school and medical records. This is the part that's—that's difficult for me, but *I think that those rights are—attendant to the legal status of being a parent.*

"And *because I cannot find that * * * Husk is—is—has been—is a psychological parent as defined by the statute, I can't give her that relief.* But * * *Adelman has said that she would provide that information to * * * Husk.

"And so part of this order is that * * * Adelman will provide * * * Husk with [that information.]"

(Emphases added.)

On appeal, Husk does not contend that the court indeed had authority under ORS 109.119 to order such rights; rather, she claims that the court could order such rights because Adelman had agreed to provide Husk such rights under their prior mediated agreement. Yet she concedes that that agreement was unenforceable. Thus, finding no authority for that provision of the court's order (though acknowledging the court's understanding that Adelman had indicated a willingness to communicate such information even absent an order), we conclude that the court erred and reverse that provision of the judgment.

Judgment provision granting Husk access to child's medical and education records reversed; otherwise affirmed.