Argued and submitted May 21, 2019, affirmed July 8, petition for review denied October 22, 2020 (367 Or 218)

In the Matter of A. L. M.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

A. L. M.,
*Appellant.*

Crook County Circuit Court
14JU02574; A166888

469 P3d 244

Youth was adjudicated delinquent in relation to two counts of attempted first-degree sodomy, and the juvenile court ordered him to serve probation. Near the end of his probationary term, youth requested to be relieved of the obligation to report as a sex offender, in accordance with ORS 163A.030. Under that statute, youth had the burden to prove by clear and convincing evidence that he was "rehabilitated and [did] not pose a threat to the safety of the public." The juvenile court denied youth's request after an evidentiary hearing. On appeal, youth argues that the record does not support the juvenile court's decision. *Held*: A reasonable juvenile court could conclude, on this record, that the evidence did not demonstrate clearly and convincingly that youth was rehabilitated and did not pose a public-safety threat. Accordingly, the court did not err when it ordered youth to report as a sex offender.

Affirmed.

Daniel Joseph Ahern, Judge.

Christa Obold Eshleman argued the cause for appellant. On the brief was Adrian T. Smith.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Aoyagi, Judge, and Hadlock, Judge pro tempore.

HADLOCK, J. pro tempore.

Affirmed.

**HADLOCK, J. pro tempore**

Youth was adjudicated delinquent in relation to two counts of attempted first-degree sodomy, and the juvenile court ordered him to serve probation. As the end of his probationary term approached, youth requested to be relieved of the obligation to report as a sex offender, pursuant to ORS 163A.030.[1] Under that statute, youth had the burden to prove by clear and convincing evidence that he was "rehabilitated and [did] not pose a threat to the safety of the public." ORS 163A.030(7)(b). The juvenile court denied youth's request after an evidentiary hearing, explaining that youth had not met his burden of persuasion. It therefore ordered youth to report as a sex offender pursuant to ORS 163A.025. On appeal, youth argues that the record does not support the juvenile court's decision, emphasizing his successful completion of both probation and sex-offender treatment. We disagree with youth's contention that the record in this case does not support the juvenile court's decision. To the contrary, the record permitted the court *not* to be persuaded, by clear and convincing evidence, that youth was rehabilitated and did not pose a public-safety threat. Accordingly, we affirm.

The sole question before us is whether the juvenile court erred when it denied youth's request to be relieved of the obligation to report as a sex offender. Accordingly, we describe only those aspects of the record that are pertinent to the challenged decision. In doing so—and for reasons we discuss later in this opinion—we describe the pertinent facts consistently with the trial court's factual findings, "reviewing for any evidence that supports those findings." *Husk v. Adelman*, 281 Or App 378, 383, 383 P3d 961 (2016). Where the trial court has not made express findings, we describe the evidence "consistently with the trial court's implicit findings in support of its conclusion." *State v. J. D. S.*, 242 Or App 445, 448, 263 P3d 1017 (2011).

When youth was 15 years old, he sexually abused two of his young relatives, then ages eight and 10. Youth and

---

[1] Although the legislature has amended ORS 163A.030 and some of the other pertinent statutes since the hearing in this case, those amendments do not affect our analysis. Accordingly, all references are to the current versions of the statutes.

the victims were staying at their grandparents' house. Over the course of three days, youth abused the victims repeatedly while the grandparents were in bed. Youth anally penetrated both victims, made them perform oral sex on him, and made them touch his penis while he watched pornography. Youth bribed the victims by saying they could play certain games and could smoke some of youth's marijuana. The abuse was physically painful to the victims, and youth did not stop assaulting them when they asked him to. The victims felt intimidated by youth in association with the abuse.

In August 2014, the state filed a delinquency petition in juvenile court alleging that youth had committed acts which, if done by an adult, would constitute multiple counts of third-degree sodomy and attempted first-degree sodomy. Before the petition was adjudicated, youth was evaluated by a psychologist at his attorney's request. The psychologist reported that youth's "behavior appears to have been largely impulsive rather than a sexual preference," and concluded that youth did not qualify for a diagnosis of pedophilia, although "one must rule out the possibility of *** paraphilia." The psychologist reported that youth was not antisocial, that his prognosis was positive, and that he needed treatment, which could dramatically reduce his recidivism risk.

Youth subsequently admitted to two counts of attempted first-degree sodomy, one involving each of the victims, and the juvenile court adjudicated youth delinquent on those two counts in early 2015. As part of its disposition, the court placed youth on probation for 36 months, ordered him to enter and successfully complete sex-offender treatment with counselor Jeff Rex, and ordered him to take and pass a "full disclosure polygraph and maintenance polygraphs as directed by" Rex. Youth began treatment with Rex as ordered.

In July 2015, youth took a polygraph that indicated deception in relation to youth's conduct toward the younger of his two victims. At that point, youth had been in treatment for five months, but he still was denying having sexually

abused that child. A few months later, another polygraph examination reflected "full disclosure" by youth.

In November 2015, Rex reported that, "[a]lthough [youth had] struggled at times with complete transparency and work ethic," he was "doing very well" at the time of the report. Youth had passed "a full-disclosure polygraph" and "an incident specific examination clarifying details regarding the adjudicated offenses." He was also progressing well in other areas and, as part of his treatment, had written "clarification letters" to the victims in which he apologized for his behavior.[2] Youth completed his sex-offender treatment in 2016. At that point, youth had completed all assignments and benchmarks, including "being able to discuss [his offenses] with * * * Rex and being able to document what had taken place and the effects that it had on the victims of the case."

In 2017, the county juvenile department notified the court that youth's probation would expire soon and that youth "wishe[d] to address his registration requirements." A hearing was held in January 2018, and the parties submitted exhibits that included documentation of the victims' reports of abuse, as well as youth's 2014 psychological examination and a 2016 discharge report from counselor Rex. Youth called a single witness, his counselor with the county juvenile department (Scott Grasle), who testified that youth had met the requirements of his probation, had successfully completed sex-offender treatment, and had paid restitution.

Grasle also testified that youth had not been charged with any additional offenses or probation violations. However, during an April 2016 polygraph examination, youth disclosed that he had once smoked marijuana, which was unlawful. Youth agreed to submit to urinalyses so Grasle could monitor his performance. An early urinalysis showed a low level of THC, but a later urinalysis "tested

_____

[2] Youth's juvenile-department counselor, Grasle, felt that youth took responsibility for his conduct in those letters. However, the victims' mother viewed the letters as "very generic" and felt "it was obvious that [youth] was only writing them because he had to for probation." She had not let the victims read the letters because she "felt like it would have been a slap in the face to them to even read what he wrote."

clean," and Grasle testified that "that was pretty much where it was left as far as marijuana use." The indication that youth had once used marijuana "wasn't necessarily a major concern" to Grasle and he did not consider it "indicative of something problematic." However, months after youth's initial disclosure, Grasle "obtained a couple of [urinalyses] which did test positive for THC," so he thought "it's always something that is potentially an issue." Youth's most recent test before the January 2018 hearing was "clean."[3] Despite youth's marijuana use, Grasle had no reservations about his performance on probation. However, he declined to give an opinion on whether youth should be required to report as a sex offender because of the "long list of what needs to be considered."

The state also called one witness, the victims' mother, who testified about how the abuse had affected her children. Before the abuse occurred, the victims had "idolized" youth, "wanted to be like him," and "wanted to hang out with him all the time." Now, though, both victims exhibit an "extreme amount of anger." One of the victims "lets everything build up * * * and then flies off the handle at the smallest thing," while the other boy has "more of just a constant anger" that shows "in almost everything he does."

In making their closing arguments to the juvenile court, both parties acknowledged that the juvenile court's decision about whether to relieve youth of his reporting requirement would involve consideration of many factors, including those listed in ORS 163A.030(8). Broadly speaking, that statute identifies considerations related to the nature and circumstances of the youth's acts, the effect of those acts on the victims, the youth's performance on supervision and in treatment, other characteristics of the youth and the victims, and the "protection afforded the public by records

---

[3] Grasle also testified that youth had not successfully passed a math test that was necessary for youth to complete his GED; despite certain challenges youth faced in that regard, Grasle felt that youth could have passed the test if he was "really working on it." However, when the juvenile court explained its decision not to relieve youth of the sex-offender reporting requirement, it emphasized that it was "not relying [on the] educational issue" in making that ruling because "[t]he fact that [youth] can't pass a GED math test has nothing to do with [the court's] decision whether [youth is] a risk to the community or not."

of sex offender registration."[4] The statute also expressly authorizes the juvenile court to consider "[a]ny other relevant factors." ORS 163A.030(8)(s). Youth acknowledged that

---

[4] ORS 163A.030(8) provides:

"In determining whether the person has met the burden of proof, the juvenile court may consider but need not be limited to considering:

"(a) The extent and impact of any physical or emotional injury to the victim;

"(b) The nature of the act that subjected the person to the duty of reporting as a sex offender;

"(c) Whether the person used or threatened to use force in committing the act;

"(d) Whether the act was premeditated;

"(e) Whether the person took advantage of a position of authority or trust in committing the act;

"(f) The age of any victim at the time of the act, the age difference between any victim and the person and the number of victims;

"(g) The vulnerability of the victim;

"(h) Other acts committed by the person that would be crimes if committed by an adult and criminal activities engaged in by the person before and after the adjudication;

"(i) Statements, documents and recommendations by or on behalf of the victim or the parents of the victim;

"(j) The person's willingness to accept personal responsibility for the act and personal accountability for the consequences of the act;

"(k) The person's ability and efforts to pay the victim's expenses for counseling and other trauma-related expenses or other efforts to mitigate the effects of the act;

"(l) Whether the person has participated in and satisfactorily completed a sex offender treatment program or any other intervention, and if so the juvenile court may also consider:

"(A) The availability, duration and extent of the treatment activities;

"(B) Reports and recommendations from the providers of the treatment;

"(C) The person's compliance with court, board or supervision requirements regarding treatment; and

"(D) The quality and thoroughness of the treatment program;

"(m) The person's academic and employment history;

"(n) The person's use of drugs or alcohol before and after the adjudication;

"(o) The person's history of public or private indecency;

"(p) The person's compliance with and success in completing the terms of supervision;

"(q) The results of psychological examinations of the person;

"(r) The protection afforded the public by records of sex offender registration; and

"(s) Any other relevant factors."

some of the statutory factors "weigh in favor of registration," but he characterized those factors as centering "around the original events, the circumstances, the youth, the age, the gender" and being "from early on." Youth argued that consideration of the factors related to the progress he had made in the years following the abuse weighed "more heavily" and should lead the court "to find by clear and convincing evidence that [youth] is rehabilitated and that he does not pose a danger to society and that he not be required to register."[5]

The state emphasized several factors in arguing to the contrary: the young ages of the victims; that the abuse happened repeatedly, at separate times over the course of a weekend; the nature of youth's conduct; and how physically painful youth's abusive acts had been for the victims. The state also pointed out that youth had acted illegally in using marijuana.

In announcing its ruling, the juvenile court expressly recognized youth for having done well on probation and for having successfully completed community-based treatment. The juvenile court then explained its remaining concerns, which focused on the nature and circumstances of youth's sexual assault of the victims. The court noted that the abuse was not "an isolated incident," but "occurred over three days." Moreover, youth's acts were not the type of conduct "that could be confused as to what's horseplay and what's inappropriate behavior." To the contrary, the court found that the state had been accurate when, in closing argument, it described the evidence of youth's conduct as including forcible anal sex, oral sex, intimidation, forced masturbation, and pornography. The court also focused on the age difference between youth and the victims, that youth had been entrusted with their care, and that the victims were vulnerable in that situation and because of their young ages and their family relationship to youth. Finally, the court also took into account youth's marijuana use, given the court's understanding that youth had used marijuana "as an offer

---

[5] We note that the pertinent statutes refer expressly to a reporting requirement, not to a registration requirement. ORS 163A.025(1)(a); ORS 163A.030(1), (7). The parties and the juvenile court sometimes referred to the requirement relating to "registration," but neither party attributes any significance to that discrepancy, and it does not affect our analysis on appeal.

or an incentive at the time of this abuse." The court was concerned that, when youth used drugs or thought about using drugs, he did that in connection "with things that aren't necessarily healthy." The court concluded by stating that youth had not "convince[d it] by clear and convincing evidence that the requirement of registering as a sex offender should be eliminated in [youth's] case." The court therefore ordered that youth "register as a sex offender pursuant to ORS 163A.025."

On appeal, youth argues that the juvenile court erred "when it found that youth had failed to prove by clear and convincing evidence that he was 'rehabilitated and [did] not pose a threat to the safety of the public' as ORS 163A.030 requires, and required him to register as a sex offender." Youth's argument has two parts. First, youth focuses on our standard of review, asserting that we review for legal error the trial court's ruling that youth failed to meet his burden of proving that he is rehabilitated and does not pose a public-safety threat. In that regard, youth relies on our decision in *Patterson v. Foote*, 226 Or App 104, 204 P3d 97 (2009), which we discuss below. Second, youth asserts that the record includes ample evidence that he has been rehabilitated and does not pose a safety threat; he claims further that "the state presented no evidence to the contrary."

In response, the state takes on youth's characterization of the standard of review on appeal:

> "Although the state agrees that whether youth failed to meet his 'burden of proof' is reviewed 'as a matter of law,' *** the more precise question here is whether the evidence in the record compelled the juvenile court to find that youth had met his burden."

Applying that standard, the state argues that the evidence did not require the juvenile court to find itself persuaded that youth had met his burden. Put differently, the state argues that it was permissible for the juvenile court to find itself unpersuaded that youth had met his burden, even if another court might have reached a different conclusion, given "the severity and characteristics" of youth's offenses, his victimization of vulnerable children, and his repeated unlawful use of marijuana while on probation.

We begin our analysis by setting out the pertinent statutory provisions and discussing the standards of review we apply on appeal. When a youth has been found within juvenile court jurisdiction for conduct that would constitute a felony sex crime if committed by an adult, the juvenile court must "hold a hearing on the issue of reporting as a sex offender," generally in the six-month period before juvenile-court jurisdiction is terminated. ORS 163A.030(1)(a); *see* ORS 163A.030(1)(b)(A) (timing). At that hearing, the youth "has the burden of proving by clear and convincing evidence that [the youth] is rehabilitated and does not pose a threat to the safety of the public." ORS 163A.030(7)(b). The juvenile court may consider "[a]ny *** relevant factors" in making that decision, including those listed in ORS 163A.030(8). If the trial court finds that the youth has not met the burden of proving by clear and convincing evidence that the youth is rehabilitated and does not pose a public-safety risk, "the court shall enter an order requiring [the youth] to report as a sex offender under ORS 163A.025." ORS 163A.030(7).

Thus, ORS 163A.030 encompasses multiple legal principles applicable here: (1) it describes the factual question before the juvenile court in a hearing under that statute—whether a youth is rehabilitated and does not pose a public-safety threat; (2) it assigns the burden to the youth to establish those facts by clear and convincing evidence; (3) it specifies nonexclusive factors that the court may consider in making its decision; and (4) it specifies what the juvenile court must do if the youth does not meet the youth's burden—the court must require the youth to report as a sex offender.

Those different aspects of ORS 163A.030 also implicate different standards of review on appeal. We review for legal error the juvenile court's application of the *law* that the statute announces, determining whether, as a matter of law, the juvenile court erred when it determined (1) *what* facts it had to decide, (2) which party bore the burden of persuading the juvenile court regarding those facts, and what burden of persuasion applied, (3) whether the court considered relevant factors, and (4) given the court's factual findings, what result the statute required.

But with respect to the juvenile court's factual findings themselves, "our appellate function is limited to resolving whether there was sufficient evidence for the *trial* court, sitting as the trier of fact, to have made the required findings \* \* \*." *Husk*, 281 Or App at 383 (emphasis in original) (addressing a different statutory scheme that also put the burden on one party to establish certain facts by clear and convincing evidence). We do not substitute our judgment for that of the juvenile court, deciding whether the evidence would have satisfied us that youth was rehabilitated and did not pose a public-safety threat. *See id*. ("[B]ecause we are not undertaking *de novo* review, we do not endeavor to make our own findings of fact or to determine for ourselves whether" a party met its burden of persuasion.). Rather, the question is whether, based on the evidence in the record, *any* reasonable juvenile court could have made the factual findings that the court did in this case.

That standard of review—that we review the juvenile court's factual findings only to determine whether evidence in the record supports them—applies even though the burden on youth was high, *viz*., to establish rehabilitation and lack of a public-safety threat by clear and convincing evidence. *See J. D. S*., 242 Or App at 447-48 (in reviewing trial court's decision in an involuntary commitment case, "we review the sufficiency of the evidence by viewing the evidence in the light most favorable to the state to determine whether any rational trier of fact \* \* \* could have found appellant to be a danger to himself or others by clear and convincing evidence"; the appellate court does "not reweigh the evidence"). *Cf. Husk*, 281 Or App at 383 ("The clear and convincing standard of proof simply refers to the degree of certainty that must exist in the mind of the trial court regarding its ultimate determination." (Internal quotation marks omitted.)).

And that standard—reviewing only to determine if the record includes evidence supporting the juvenile court's factual findings—applies even though we are reviewing the juvenile court's finding that it was *not* persuaded that youth met his burden of proof, rather than reviewing (as we more frequently do) a trial court's finding that it *was* persuaded

by a party's evidence. *See State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003) (explaining that an appellate court is "bound by a trial court's 'finding' that a party's evidence is not sufficiently persuasive" and is "equally bound by a trial court's acceptance or rejection of evidence").

Thus, the juvenile court's finding that it was *not* persuaded by clear and convincing evidence that youth was rehabilitated and did not pose a public-safety threat will withstand appellate challenge "unless the evidence in the case is such that the [juvenile] court as finder of fact could decide [the] factual question in only" the other way. *Id.*; *see id.* at 526 (reviewing trial court's finding that a party had not met its burden of proof to determine whether "the evidence was of such a character or of such weight that the trial court was required to rule" in that party's favor). That is, we will disturb the juvenile court's finding that it was not persuaded that youth had met his burden of persuasion only if the record would compel *every* reasonable juvenile court to be persuaded that youth *had* met that burden. *State v. T. C.*, 268 Or App 615, 621, 342 P3d 1112 (2015) (reviewing to determine whether the evidence was such as to compel the trial court to find that a party had met its burden of proof). In reviewing the trial court's decision, we view the evidence "in the light most favorable to the juvenile court's determinations and assum[e] the correctness of that court's explicit factual findings if any evidence in the record supports them." *Dept. of Human Services v. T. J.*, 302 Or App 531, 532-33 & n 2, 538, 462 P3d 315 (2020) (so stating in appeal from juvenile-dependency proceeding in which the court assumed, without deciding, that the petitioning party bore the burden of proving certain facts by "clear and convincing" evidence).

Although the foregoing appellate principles are well-settled, we discuss them here because youth does not acknowledge that we review the trial court's factual findings only to determine whether evidence in the record supports them. To the contrary, relying heavily on our decision in *Patterson*, youth argues that we should determine, "*as a matter of law*, whether the trial court correctly determined that youth failed" to meet his burden of proof. (Emphasis added.)

Youth's reliance on *Patterson* is understandable but, ultimately, misplaced. In *Patterson*, a person who had been convicted of a misdemeanor sex offense petitioned to be relieved from the duty to report as a sex offender, pursuant to *former* ORS 181.820 (2007), *renumbered as* ORS 163A.120 (2015). *Patterson*, 226 Or App at 106. Under that statute, if the trial court was "satisfied by clear and convincing evidence that [a qualifying] petitioner [was] rehabilitated and *** [did] not pose a threat to the safety of the public," then the court was required to "enter an order relieving the petitioner of the duty to report" as a sex offender. *Former* ORS 181.820(3), *renumbered as* ORS 163A.120(3) (2015). In *Patterson*, the petitioner had completed probation 10 years before seeking relief from the reporting obligation, and he submitted uncontradicted evidence that he had successfully completed sex-offender treatment, that he was remorseful, and that he "was leading a law-abiding and socially constructive life." 226 Or App at 115. Moreover, the petitioner's treating psychologist asserted that the petitioner was "in the lowest risk group" of convicted sex offenders, that he did not represent a danger to public safety, and "that his recidivism risk [was] virtually nil, being less than one percent." *Id*. at 108. Nonetheless, the trial court concluded that the petitioner had not met his burden of proving that he was rehabilitated and not a safety threat, given the court's concern that the psychologist "[gave] any percentage of the possibility of reoffending, even if it's less than one percent." *Id*.

We reversed, holding that the trial court had misconstrued what the petitioner had to prove to meet his burden. Specifically, we rejected the idea that a petitioner can prove that he or she is "rehabilitated" only by establishing, as the trial court had suggested, "that he or she is now absolutely free of *any* risk—however small—of future error." *Id*. at 113 (emphasis in original). Put differently, we rejected the idea—urged by the state in that case—that the statute required the petitioner to supply "an absolute guarantee of future perfection." *Id*. Rather, we held, the statute required the petitioner "to demonstrate by clear and convincing evidence" that, as a result of successfully completing services that were "designed to ameliorate his or her previous

behavioral and psychological patterns and to prevent a recurrence of unlawful conduct," the petitioner "does not present a threat, that is, he or she is not likely to reoffend." *Id*. at 114-15. Applying that legal standard to the evidence in *Patterson*, we observed that the evidence of the petitioner's successful completion of sex-offender treatment and his extremely low recidivism risk was uncontroverted, that is, "there [was] a complete absence of evidence to the contrary, either factual or in the form of an opinion." *Id*. at 115. The record included a letter from the petitioner's victim, who addressed how she had been affected by the petitioner's crime, but that letter "provided no information pertinent to the ultimate criteria for obtaining relief, *viz*., that the petitioner is rehabilitated and does not pose a threat to public safety." *Id*. Given those circumstances, we held that the trial court had erred in determining that the petitioner had not met his burden of proving the prerequisites to obtaining relief from the reporting requirement. *Id*.

If that is all that *Patterson* said, we would easily read it—including the standard of review it applied to the trial court's decision—in keeping with the principles discussed earlier in this opinion. Given the compelling evidence of the *Patterson* petitioner's rehabilitation and "virtually nil" recidivism risk, *and* the "complete absence" of any evidence to the contrary, *id*., we would readily view *Patterson* as being one of those rare cases in which the evidentiary record would compel every reasonable trial court to find that the petitioner had met his burden of persuasion.

But the opinion in *Patterson* is more complicated than we have yet described. In reaching our conclusion in that case, we interpreted *former* ORS 181.820 (2007) as establishing a standard of review dramatically different from the standard we have discussed in this case—a standard that more closely (albeit implicitly) resembles *de novo* review of the facts. We found that standard embodied in the terms of *former* ORS 181.820 (2007), specifically in two aspects of the statute: (1) that it required the petitioner to prove his case by clear and convincing evidence, and (2) that it required the court to grant relief if the petitioner met that burden. *See id*. at 110. "Taken together, those aspects

of [*former*] ORS 181.820 [(2007)] suggest[ed] to us that, on review of the trial court's order, we determine *as a matter of law* whether, on this record, the trial court reached *the correct* result." *Id.* (emphases added).

That part of *Patterson* suggests that—unlike in other circumstances where we acknowledge that an evidentiary record might support a range of permissible factual findings, and we review only to determine whether the evidence would allow *any* reasonable trial court to make the findings that were made—*former* ORS 181.820 (2007) allowed for only *one* "correct answer" to flow from a given evidentiary record, and we reviewed to determine whether the trial court made that "correct" factual finding. Put differently, *we* decided whether the petitioner had met his burden of proof—an undertaking that we generally would characterize as exercising *de novo* review.

For at least three reasons, we decline to follow that aspect of *Patterson* here. First, because *Patterson* involved a statute different from the one at issue in this case, any statutory construction announced in that opinion does not bind our construction of ORS 163A.030, even though the two statutes have similarities. *Former* ORS 181.820 (2007) is not a direct predecessor to ORS 163A.030[6] and *former* ORS 181.820 (2007) and ORS 163A.030 differ in material ways.[7] Our discussion of the standard of review in *Patterson* therefore does not bind us here, as it would if we were addressing

---

[6] *Former* ORS 181.820 (2007) set out a process that allowed a convicted sex offender to seek relief from reporting requirements when 10 years had passed after termination of the offender's supervision on probation, conditional release, parole, or post-prison supervision. It did not relate, as does ORS 163A.030, to allowing youth offenders to seek relief from reporting requirements immediately upon the termination of juvenile court jurisdiction. *Former* ORS 181.820 (2007) has since been renumbered ORS 163A.120(3).

[7] For example, *former* ORS 181.820 (2007) stated only that a trial court was required to grant relief when it "was satisfied by clear and convincing evidence" that the petitioner had rehabilitated and was not a threat; it did not explicitly assign a burden of persuasion to either party. When the legislature enacted ORS 163A.030(7)(b), it chose to expressly assign that burden to the person seeking relief from the reporting requirement. In addition, the list of factors the legislature contemplates a court will consider in making a decision under ORS 163A.030 is much broader than the factors that were identified as pertinent to a decision under *former* ORS 181.820 (2007), suggesting more room for differing—yet still permissible—findings about a youth's rehabilitation.

the same statute at issue in that case. *Cf. State v. Civil*, 283 Or App 395, 405-06, 388 P3d 1185 (2017) (explaining that we will overrule our own prior construction of a statute only when it is "plainly wrong").

Second, although we discussed the standard of review in some detail in *Patterson*, that discussion ultimately was unnecessary to our decision. As explained above, given the compelling and one-sided evidentiary record in *Patterson*, the opinion can be understood to hold that *no* reasonable trial court could find that the petitioner had not met his burden of proof. Because the evidentiary record in *Patterson* could not support a *case-specific* finding that the petitioner had not met his burden of proof, we had no need to go further and explore whether there is only one "correct answer" in *all* sex-offender-reporting cases. Put differently, we had no need to depart from our ordinary standards of review in *Patterson* to determine that the evidentiary record did not support the trial court's finding.

Third, we find *Patterson*'s discussion of the standard of review under *former* ORS 181.820 (2007) to be idiosyncratic. It is not unusual for a statute to impose a "clear and convincing" standard of proof; nor is it unusual for a statute to require a trial court to take certain action if a party meets (or does not meet) its burden of proving certain facts by that "clear and convincing" standard. And—as explained above, and leaving *Patterson* aside—we have consistently viewed our task under such statutes as reviewing trial courts' factual findings to determine whether evidence in the record supports them—we do not deem there to be only a single "correct" finding and then determine, as a matter of law, whether the trial court made that required finding. *See, e.g., Husk*, 281 Or App at 381-84 (in determining whether a party met its burden of proving a certain matter by clear and convincing evidence—successful proof of which would require the trial court to grant relief to that party—"our appellate function [was] limited to resolving whether there was sufficient evidence for the *trial court*, sitting as the trier of fact, to have made the required findings and determination" (emphasis in original)). It is not entirely clear why we nonetheless interpreted *former* ORS 181.820 (2007) to require a different standard of review, and we decline to

extend *Patterson*'s announcement of that standard beyond the context of the statute at issue in that case.

We therefore apply our ordinary standard of review to the juvenile court's decision under ORS 163A.030, determining whether the juvenile court's factual findings are supported by evidence in the record. That is, we ask whether *any* reasonable juvenile court could have found itself unpersuaded, on this record, that youth had established by clear and convincing evidence that he was rehabilitated and did not pose a public safety threat.

So framed, we answer the question affirmatively. ORS 163A.030 specifically authorizes a juvenile court to consider the character of a youth's sexual offenses and the vulnerability of the youth's victims when deciding whether the court is persuaded, by clear and convincing evidence, that the youth is rehabilitated and no longer presents a threat. Here, the juvenile court did just that, acknowledging youth's successful completion of probation and sex-offender treatment, but finding that youth had repeatedly sodomized his very young and vulnerable victims, that youth had taken advantage of the difference between his age and their ages, and that youth had taken advantage of the position of authority or trust he had been given over the children. The court also found that youth uses drugs "in connection with things that aren't necessarily healthy," noting the evidence that he offered marijuana to his victims in conjunction with abusing them. Based on that, the court was concerned by youth's repeated use of marijuana while on probation. Finally, the court observed that it could have "no idea" how youth would do once he was "off supervision," given that— up to the point of the hearing—youth had "been monitored fairly closely" since the abuse occurred.

The record in this case supports each of those findings. This is not a case, like *Patterson*, where there was both compelling evidence of rehabilitation (there, a psychologist's opinion that the petitioner posed a "virtually nil" risk of recidivism) and "a complete absence of evidence" suggesting a lack of rehabilitation. 226 Or App 104. Given the evidence before the juvenile court, we cannot say that *no* court could find itself unpersuaded that youth was rehabilitated and no

longer presented a threat to public safety (even though other juvenile courts might have found, on the same record, that youth had been rehabilitated). To the contrary, a reasonable juvenile court could determine—as this one did—that the evidence did not demonstrate clearly and convincingly that youth was unlikely to reoffend, given the severity of his repeated sexual offenses against very young and vulnerable victims, his continued unlawful use of a drug that he had utilized in association with those offenses, and the fact that no evidence yet existed of how youth would perform when he no longer was being supervised.[8] Accordingly, the juvenile court did not err when it ordered youth to report as a sex offender pursuant to ORS 163A.025.

Affirmed.

---

[8] We note that this is not a case, like *Patterson*, in which the issue was whether (under a different statute) to relieve a person from sex-offender reporting requirements once 10 years had passed after the person completed the probationary sentence that he had received in association with his conviction for a single misdemeanor sex crime. 226 Or App at 106. The question before the trial court here was very different: whether a youth who committed acts that would constitute felony sex crimes if committed by an adult should be relieved of sex-offender reporting requirements *immediately* upon the termination of his probation. We also note that youth may have future opportunities to seek relief from the reporting requirement. *See generally* ORS 163A.130(1), (2)(a) (setting out process for a person who was required to report as a sex offender for conduct that would constitute a Class A or Class B felony sex crime if committed by an adult to seek relief from the reporting requirement "no sooner than two years after the termination of juvenile court jurisdiction over the person").