Argued and submitted August 5, 2020, affirmed December 14, 2022, petition for review denied March 30, 2023 (370 Or 827)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTOPHER ROBERT WALKER,
*Defendant-Appellant.*

Coos County Circuit Court
17CR23843; A169812

522 P3d 868

Defendant appeals from a judgment of conviction for second-degree manslaughter (ORS 163.125), fourth-degree assault (ORS 163.160), and reckless driving (ORS 811.140), arising out of a fatal car accident in which defendant crashed into an oncoming car while attempting to pass other vehicles on a two-lane highway. Police impounded defendant's vehicle, and a tow company eventually sold the vehicle for scrap. On appeal, defendant first assigns error to the trial court's denial of his motion to exclude evidence of his vehicle's mechanical condition, arguing that the state violated his due process rights by failing to preserve the vehicle and that the responding trooper acted in bad faith in failing to preserve the vehicle. Defendant further assigns error to the trial court's instruction that the jury could convict him on nonunanimous verdicts. *Held*: Assuming without deciding that the state failed to preserve the vehicle, the trial court did not err when it denied defendant's motion to exclude evidence. The trial court found that the state did not act in bad faith in failing to preserve that potentially useful evidence and there is evidence in the record to support that finding when the state was acting in accord with its standard impound practices. Second, because the jury was unanimous on each guilty verdict, any instructional error was harmless beyond a reasonable doubt.

Affirmed.


Martin E. Stone, Judge.

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Christopher R. Walker filed the supplemental brief *pro se*.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

POWERS, J.

Affirmed.

**POWERS, J.**

Defendant appeals from a judgment of conviction for second-degree manslaughter (ORS 163.125), fourth-degree assault (ORS 163.160), and reckless driving (ORS 811.140), arising out of a fatal car accident in which defendant crashed into an oncoming car while attempting to pass other vehicles on a two-lane highway. On appeal, defendant first assigns error to the trial court's denial of his motion to exclude evidence of his vehicle's mechanical condition, arguing that the state violated his due process rights by failing to preserve the vehicle and that the responding state trooper acted in bad faith in failing to preserve the vehicle. Defendant further assigns error to the trial court's instruction that the jury could convict him on nonunanimous verdicts. Lastly, in a supplemental *pro se* brief, defendant advances three additional assignments of error, which we reject without discussion. As explained below, even assuming that the state failed to preserve the vehicle, the trial court did not err in concluding that the state did not act in bad faith to preserve that potentially useful evidence. Further, defendant's claim of instructional error was harmless. Accordingly, we affirm.

We are bound by the trial court's factual findings so long as they are supported by sufficient evidence in the record. *See State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion. *Id*. We set out the relevant facts consistently with our standard of review.

Defendant was driving a Dodge Durango outside of Myrtle Point on Highway 42, a two-lane highway. In an attempt to pass two vehicles ahead of him—a pickup truck and a box truck—defendant entered the oncoming lane in a straightaway passing zone. He passed the pickup as the passing zone ended and the road began to curve. Although the passing zone ended (and the roadway became a no-passing zone), defendant remained in the lane for oncoming traffic in an effort to pass the box truck. At that time, an oncoming vehicle came around the curve. Defendant appeared to

brake, and the driver of the box truck saw smoke from defendant's tires. Defendant crashed into the oncoming Toyota, passenger side to passenger side, injuring the Toyota's driver and killing the passenger, who died of her injuries at a hospital later that day. Both vehicles were damaged to the point that they were undriveable. A sheriff's deputy who was driving on Highway 42 noticed the crash scene shortly after it happened, and other first responders arrived shortly thereafter.

Oregon State Police Trooper Dunlap arrived at the crash scene and spoke with defendant. Defendant told Dunlap that he was driving without insurance and that his driver's license was suspended. Because defendant was driving without insurance and without a valid license, Dunlap impounded the Durango. Before the Durango was towed, Dunlap allowed defendant and his wife, who had arrived after the accident, to remove some, but not all, personal items from the vehicle, explaining there was an ongoing criminal investigation. Dunlap gave defendant a copy of the completed "780 Form," also known as a "Towed Auto Report," as he normally does, which provided that the vehicle was being impounded under the authority of ORS 809.720 and outlined the process that defendant would need to go through to retrieve the impounded vehicle. Dunlap testified at the pretrial omnibus hearing that he was unsure if he told defendant that he would phone defendant to notify defendant of when he could retrieve the vehicle.

A tow company took the Durango from the crash scene to its gated tow yard. Dunlap obtained a warrant to search the Durango. About three weeks after the crash, Dunlap photographed the impounded vehicle at the tow yard while Trooper Brock performed a mechanical inspection of the Durango. After Brock completed the inspection, Dunlap verbally released the Durango to the tow company. The Durango was not placed into evidence, and Dunlap did not command the tow company to destroy the vehicle. Dunlap neither called defendant nor wrote to tell him that the Durango had been released to the tow company. Defendant did not attempt to retrieve the Durango from the tow company. The tow company unsuccessfully tried to

contact defendant by mail and, subsequently, foreclosed on the Durango and then sold the vehicle for scrap to recover the cost of towing and storage.

Before trial, defendant moved to exclude evidence of the Durango's mechanical condition, arguing that the state violated his due process rights to a fair trial and to compulsory process under the Sixth and Fourteenth Amendments, and Article I, section 11, of the Oregon Constitution, when, in bad faith, it failed to preserve the Durango and therefore deprived him of the chance to test the vehicle. After a pretrial omnibus hearing, the trial court denied defendant's motion. The trial court first concluded that the state had not failed to preserve the Durango. It found Dunlap credible and noted that Dunlap gave defendant the "Towed Auto Report," which explained the process for retrieving the impounded vehicle, although defendant did not sign the "release" portion of that form. Second, following the analysis set forth in *State v. Faunce*, 251 Or App 58, 282 P3d 960 (2012), *rev den*, 353 Or 203 (2013), the trial court concluded that, even if it were to find that the state failed to preserve defendant's vehicle, an inspection and test of the vehicle would not have produced material exculpatory evidence; rather, the vehicle would have produced only potentially useful evidence. *See id*. at 67 (noting the distinction between "potentially useful" evidence and "material exculpatory" evidence). The trial court explicitly found that defendant failed to show that the state acted in bad faith with respect to preserving the vehicle as evidence. The trial court found that there was no "bad faith here on the part of the police in order to try to secrete or *** try to inhibit or hide this vehicle from [defendant]" and that the "only evidence of alleged bad faith" was "Dunlap's supposed failure to follow up with defendant by telephone regarding the vehicle." The trial court went on to explain that any obligation that Dunlap had "to contact defendant personally by phone" was negated because Dunlap had provided defendant with written instructions on how to retrieve the vehicle from the tow company.

During defendant's jury trial, the state introduced evidence of the Durango's mechanical condition. At the close of trial, the trial court instructed the jury that it could return a nonunanimous verdict, to which defendant did

not object. The jury unanimously found defendant guilty on Count 1 (manslaughter in the second degree as a lesser included offense of first-degree manslaughter), Count 2 (assault in the fourth degree as a lesser included offense of third-degree assault), Count 3 (reckless driving), and Count 4 and 5 (recklessly endangering two different victims). The trial court merged Counts 4 and 5 with Counts 1 and 2, respectively.

On appeal, defendant challenges the trial court's denial of his motion to exclude evidence of the Durango's mechanical condition, reprising his argument that the state failed to preserve evidence—the Durango—that was potentially useful to his defense and that the state failed to preserve the Durango in bad faith, which violated his right to due process and compulsory process. Defendant acknowledges that the analysis for his Sixth Amendment and Article I, section 11, compulsory process arguments are absorbed into his due process arguments under the Fourteenth Amendment. *See State v. Zinsli*, 156 Or App 245, 251, 966 P2d 1200 (1998) (explaining that, to determine "whether evidence is material and favorable, the compulsory process analysis is identical to the due process analysis").

On appeal, defendant raises three arguments in support of his contention that the state failed to preserve the Durango in bad faith, only one of which is preserved for appellate review. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008) (explaining that preservation serves several purposes, including providing the trial court the chance to consider and rule on an issue, ensuring fairness to the opposing party by giving them an opportunity to respond, and fostering full development of the record). Defendant preserved his argument—by asserting the same contention before the trial court—that the state acted in bad faith when it failed to notify him that he was able to retrieve the Durango, which he argues prevented him from understanding that he could retrieve the Durango and ultimately resulted in the Durango's foreclosure and destruction. He has not, however, preserved his argument—because he did not raise it before the trial court or give the state an opportunity to respond at trial—that Dunlap acted in bad faith when he chose to impound the Durango pursuant to ORS

809.720 rather than seize the Durango as evidence in a criminal investigation under ORS 819.200.[1] Similarly, by not presenting it first to the trial court, defendant failed to preserve his argument that the written information on the 780 Form that Dunlap provided to him failed to satisfy the notice provisions outlined in ORS 819.180.[2] *See* ORS 809.720(2) (providing that notice shall be given in the same manner and within the same time limits as provided in ORS 819.180); ORS 819.180(2) (providing, in part, that a vehicle taken into custody and towed is subject to towing and storage charges and that the vehicle and its contents are subject to a lien for payment of towing and storage charges and will be sold to cover such charges if the charges are not paid by a specified date). Because defendant has not preserved those two arguments for appellate review, nor asked us to review them as

---

[1] ORS 809.720 provides, in part:

"(1) A police officer who has probable cause to believe that a person, at or just prior to the time the police officer stops the person, has committed an offense described in this subsection may, without prior notice, order the vehicle impounded until a person with right to possession of the vehicle complies with the conditions for release or the vehicle is ordered released by a hearings officer. This subsection applies to the following offenses:

"(a) Driving while suspended or revoked in violation of ORS 811.175 or 811.182.

"*  *  *  *  *

"(d) Driving uninsured in violation of ORS 806.010.

"(2) Notice that the vehicle has been impounded shall be given to the same parties, in the same manner and within the same time limits as provided in ORS 819.180 for notice after removal of a vehicle.

"*  *  *  *  *

"(6) Notwithstanding subsection (3) of this section, the holder of a towing business certificate issued under ORS 822.205 may foreclose a lien created by ORS 87.152 for the towing and storage charges incurred in the impoundment of the vehicle, without payment of the administrative fee under subsection (3)(c) of this section."

ORS 819.200 provides:

"A vehicle that is being held as part of any criminal investigation is not subject to any requirements under ORS 819.170 to 819.190 unless the criminal investigation relates to the theft of the vehicle."

[2] This argument also carries another procedural impediment to reaching the merits of defendant's contention because it was raised for the first time in his reply brief. *See, e.g.*, *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 379-80, 823 P2d 956 (1991) (explaining that this court should not have reached an alternative waiver argument when that argument, in addition to not having been preserved in the trial court, was not raised in the opening brief on appeal and was instead presented for the first time in a reply brief).

plain error, we do not address them; instead, we focus solely on defendant's preserved argument that the state failed to preserve the Durango in bad faith when it failed to notify defendant that he could retrieve the Durango.

Under the Fourteenth Amendment, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 US 51, 58, 109 S Ct 333, 102 L Ed 2d 281 (1988). Given that requirement, we begin and end with an inquiry into whether defendant demonstrated that the state acted in bad faith. *See Faunce*, 251 Or App at 67 (following *Youngblood* and explaining that, when a defendant claims that the state "failed to preserve merely potentially useful evidence, such as evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant[,] *** the defendant must show that the state acted in bad faith" (internal quotation marks omitted)).

To begin, the parties' arguments diverge on the standard of review that we use to evaluate a trial court's determination that the state did not act with bad faith in violation of a defendant's rights under the Due Process Clause of the Fourteenth Amendment when the state failed to preserve potentially useful evidence. Both parties look to our decision in *Faunce* in support of their respective arguments: defendant advocates that we review bad faith as a question of law whereas the state asserts that a trial court's decision on bad faith is reviewed as a question of fact.

We conclude that bad faith is reviewed as a question of fact. Although we were not explicit in *Faunce*, our discussion implies that we reviewed the defendant's bad faith claims under the federal constitution as a question of fact. *See Faunce*, 251 Or App at 69-71. In particular, when we rejected the defendant's first and third bad-faith arguments, we highlighted the trial court's explicit factual findings. *Id.* at 69-70 (recognizing that the trial court found that the police did not know that a potential suspect's weapon, which was seized by the police after they arrested the defendant and then later returned to that potential suspect without

notification to the defendant, "was evidence favorable to defendant and instead acted in good faith to investigate" the potential suspect). Reviewing the trial court's determination that the defendant did not carry his, her, or their burden to prove that the state acted in bad faith as a factual finding is also consistent with the Supreme Court's decision in *State v. Johnson*, 335 Or 511, 523, 73 P2d 282 (2003) (explaining that a reviewing court is "bound by a trial court's 'finding' that a party's evidence is not sufficiently persuasive").[3]

Moreover, reviewing bad faith as a question of fact is consistent with how other courts review a potential violation of the federal constitution. *See, e.g.*, *State v. Johnson*, 297 Kan 210, 215, 301 P3d 287 (2013) (explaining that, in the context of a challenge under the federal constitution, the court's review for whether the state acted in bad faith in failing to preserve evidence is a question of fact); *United States v. Sivilla*, 714 F3d 1168, 1172 (9th Cir 2013) (explaining that the absence of bad faith is a factual finding reviewed for clear error, a highly deferential standard that is met only when the reviewing court is left with a definite and firm conviction that a mistake has been committed); *United States v. Flyer*, 633 F3d 911, 916 (9th Cir 2011) (describing the absence of bad faith as a factual finding that is reviewed for clear error).[4] Whether the trial court correctly applied the

---

[3] The Supreme Court explained:

"It is familiar doctrine that we are bound by a trial court's findings of fact, if there is evidence in the record to support them. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968); *State v. Miller*, 300 Or 203, 227, 709 P2d 225 (1985), *cert den*, 475 US 1141 (1986). Although this court never has had occasion to say so expressly, we think that it follows from the foregoing rule that it equally is true that we are bound by a trial court's 'finding' that a party's evidence is not sufficiently persuasive. We believe that that rule follows, because it incorporates the same judicial respect for the trial court's weighing of the evidence. Thus, unless the evidence in a case is such that the trial court as finder of fact could decide a particular factual question in only one way, we shall in the future consider ourselves equally bound by a trial court's acceptance or rejection of evidence."

*Johnson*, 335 Or at 523; *see also State v. A. L. M.*, 305 Or App 389, 399, 469 P3d 244, *rev den*, 367 Or 218 (2020) (applying *Johnson* in a juvenile delinquency proceedings and explaining that "we will disturb the juvenile court's finding that it was not persuaded that youth had met his burden of persuasion only if the record would compel every reasonable juvenile court to be persuaded that youth had met that burden") (emphasis omitted).

[4] Although the federal courts' standards of review are not necessarily comparable to our standards of review—for instance, the use of the term "*de novo*" is

applicable legal principles to the historical facts is reviewed as a matter of law. *Zinsli*, 156 Or App at 249-50.

Turning to the merits of the parties' arguments on appeal, there is no dispute that the Durango was "potentially useful evidence." The trial court so concluded, and defendant does not challenge that conclusion on appeal. Thus, we turn to defendant's argument that the trial court erred in finding that he failed to show that the state acted in bad faith. That is, when a defendant claims that the state "failed to preserve merely 'potentially useful' evidence, such as 'evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant[,]' *** the defendant must show that the state acted in bad faith." *Faunce*, 251 Or App at 67 (citing *Youngblood*, 488 US at 57-58).

Generally, when evidence is destroyed in the course of carrying out a standard practice, the state has not acted in bad faith. *See, e.g.*, *California v. Trombetta*, 467 US 479, 488, 104 S Ct 2528, 81 L Ed 2d 413 (1984) (concluding that there was no due process violation under the federal constitution when police destroyed breath samples "in good faith and in accord with their normal practice"); *United States v. Del Toro-Barboza*, 673 F3d 1136, 1150 (9th Cir 2012) ("[W]here evidence is routinely destroyed *** and the evidence is later sought for testing, the destruction or loss of such evidence is not fundamentally unfair to a defendant and will not offend traditional notions of due process."); *State v. Rossiter*, 300 Or App 405, 410-11, 454 P3d 1 (2019), *rev'd on other grounds*, 367 Or 217, 474 P3d 390 (2020) (concluding that the defendant was neither entitled to dismissal of charges nor suppression of the medical examiner's testimony when the medical examiner, as a matter of standard practice, destroyed the audio recording of his autopsy observations after completing his written report, and the defendant conceded that the recording was not destroyed in bad faith).

---

markedly different in federal practice from its use in Oregon law—bad faith has been described as a "factual inquiry." *See, e.g.*, *Foy v. Lamas*, No 2:12-0088, 2013 WL 838191, at *10 (WD Pa Mar 6, 2013) ("Whether the state's failure to preserve material exculpatory evidence violated due process is a mixed question of law and fact; however, the question of the state's good or bad faith is a factual inquiry and the presumption of correctness applies.").

Similarly, here, the Durango was destroyed as the end result of a standard process—indeed, a statutorily authorized process—allowing for a tow company to foreclose on a vehicle that it had towed to recoup the cost of towing and storage. That process began when Dunlap impounded the Durango under the authority prescribed by ORS 809.720. At that time, Dunlap provided defendant with written instructions outlining how defendant could obtain release of the Durango by giving defendant a copy of the completed 780 Form, as Dunlap testified that he "normally" does. Insofar as he has preserved his arguments, defendant's contention of bad faith reduces to the proposition that Dunlap, acting in bad faith, did not sufficiently notify defendant that he was permitted to retrieve the Durango because Dunlap provided only the 780 Form to defendant and did not follow up with defendant by phone. Dunlap provided defendant with a copy of the completed impound form that included written information about how to retrieve the vehicle—an act that was akin to following a standard practice. Other than the fact that Dunlap did not follow up with defendant by phone when he may have offered to do so, there was no other evidence that Dunlap acted in bad faith. That is, Dunlap followed a standard practice to inform defendant of how to retrieve the impounded vehicle, and, absent any other evidence of bad faith, that Dunlap followed normal practices to inform defendant of how to retrieve the impounded vehicle is insufficient to show that Dunlap acted in bad faith.

Moreover, even if Dunlap was negligent in not phoning defendant when the Durango was released to the tow company, that would not constitute bad faith. Indeed, "[b]ad faith requires more than mere negligence or recklessness." *Flyer*, 633 F3d at 916; *see also Youngblood*, 488 US at 58 (concluding that the government's failure to preserve potentially useful evidence could "at worst be described as negligent" and therefore police did not act in bad faith); *Faunce*, 251 Or App at 70 (explaining that "the state's negligence does not amount to bad faith for failing to preserve potentially useful evidence"). That is, the state does not necessarily act in bad faith merely because a different action would have been more prudent. *See, e.g.*, *Del Toro-Barboza*, 673 F3d at 1150 (concluding, in a cash smuggling case, that

the government did not act in bad faith when it failed to preserve a box in which border agents found half a million dollars in cash and when it deposited the money in a bank, stating, "[i]t might have been a better practice for the government to have retained both the box and the money for [d]efendants to test, but bad faith requires more than mere negligence or recklessness"). Here, the trial court ultimately found that the state did not act in bad faith. In so concluding, the trial court did not expressly characterize the state's action or inaction as negligent or reckless; rather, the court noted "Trooper Dunlap's supposed failure to follow up with defendant by telephone regarding the vehicle." However, even if Dunlap negligently failed to follow up with defendant by phone, that would not constitute bad faith.

In short, assuming without deciding that the state failed to preserve the Durango, we conclude that the trial court did not err when it denied defendant's motion to exclude evidence. The trial court found that the state did not act in bad faith in failing to preserve that potentially useful evidence and there is evidence in the record to support that finding when the state was acting in accord with its standard impound practices. Moreover, even if the officer was negligent in not phoning defendant when the impounded Durango was released to the tow company, that would not constitute bad faith. Therefore, the trial court did not err when it denied defendant's motion to exclude evidence.

Turning to the second assignment of error, defendant asserts that the trial court plainly erred when it instructed the jury that it could return nonunanimous verdicts. Although the trial court instructed the jury that it could convict defendant with a vote of 10 out of 12 jurors, the record reflects that the jury was unanimous on each guilty verdict. As such, we conclude that any error was harmless beyond a reasonable doubt. *State v. Ciraulo*, 367 Or 350, 354, 478 P3d 502 (2020), *cert den*, 594 US ___, 141 S Ct 2836, 210 L Ed 2d 950 (2021). Accordingly, we reject defendant's second assignment of error.

Affirmed.